## ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* JACKSON.

### Opinion delivered May 10, 1915.

1. RAILROADS—TORT OF SERVANT—LIABILITY.—A railway company will be liable in punitive or exemplary damages for the wanton and malicious tort of its porter who without provocation severely hurt a passenger by beating him.

2. CARRIERS—ACTS OF PASSENGERS—LIABILITY—ACTS OF SERVANTS.—Carriers are not absolute insurers of the safety of their passengers against injury and ill-treatment from other passengers, but are insurers of the safety of a passenger against wilful assaults and intentional ill-treatment by its servants, for whose acts it is responsible.

3. CARRIER—INJURY TO PASSENGER—ACT OF EMPLOYEE—LIABILITY.—The porter on a railway train assaulted and severely beat a pessenger without provocation, and the passenger, to protect himself, fired a pistol shot at the porter, but striking and injuring plaintiff, another passenger. *Held*, the plaintiff could recover damages against the carrier.

4. DAMAGES—PERSONAL INJURIES—AMOUNT.—A verdict of $500 is not excessive in an action against a carrier, where plaintiff, a passenger, was shot by a fellow passenger, the officers of the carrier failing to perform their duty, and the shot being provoked by an unprovoked assault of the porter upon the passenger.

Appeal from Grant Circuit Court; *W. H. Evans,* Judge; affirmed.

#### STATEMENT BY THE COURT.

These suits are for damages for personal injuries alleged to have been caused by the assault of an employee of the railroad company, a porter on the train, on appellees passengers thereon.

Frank Patterson and Andrew Jackson boarded the train at Pine Bluff, after purchasing tickets, the one to Dermott and the other to Noble Lake. As Patterson started into the coach, he was struck by the negro porter because he did not move rapidly enough on the crowded platform. He went on in with his bundles and packages and sat down about the center of the coach for colored passengers. After the train started, the porter came in the front door of the coach in which he was sitting, ap-

peared to be looking for some one, walked on to where Patterson sat and began fighting him. They fought for some little time and were separated. Patterson getting back into his seat again. The porter renewed the fight, they were again separated and the porter ran back to the front of the coach and got an iron coal shovel and started down towards Patterson again, threatening to kill him and another man who got in the way, but before he could strike Patterson, was shot at by him. The bullet missed him however and struck another passenger, Andrew Jackson, in the shoulder. Several of the passengers ran into the other coach where the white passengers were, saying they were killing people in the other coach. The conductor asked the sheriff who was in that coach to go and arrest the fighters and stop the difficulty, but he had some prisoners in charge and could not go and the conductor borrowed his pistol intending to stop it himself. By this time the porter had reached the conductor, told him of the difficulty and started back into the car where it occurred with the conductor who had the pistol in his hand when Frank Patterson, upon seeing them approaching, ran out of the coach after a big negro who turned out to be the brakeman, had grabbed him, threatened to cut his throat and took his pistol from him, and jumped from the fast moving train, striking the ground and cutting a long gash in his head. By the time they stopped the train and backed up to the place where he fell, he was able to get up and was assisted into the train.

The bullet fired from Patterson's pistol struck Andrew Jackson in the shoulder inflicting a wound that bled considerably, was painful and required some time to heal.

Patterson was badly bruised and battered by the blows inflicted by the porter, "bloody as a hog" one witness said, in addition to the cut on his head, resulting from his jumping from the train.

The train auditor was in the coach for negro passengers, when the row first began and jerked the porter around by the arm and told him to "cut it out." He

then went on with the collection of fares and made no further effort to stop the difficulty.

The cases were consolidated for trial and the jury returned a verdict in Patterson's favor for $200 actual and compensatory damages and $1,400 exemplary damages, and for $500 in Andrew Jackson's case, and from the judgments thereon the railroad prosecutes this appeal.

*E. B. Kinsworthy, W. R. Donham* and *T. D. Crawford,* for appellant.

1. There is error in the court's charge to the jury. Plaintiff was guilty of negligence. The company was not liable for a malicious or wanton assault committed by its servant. 65 Kan. 352; 166 N. Y. 289; 60 Oh. St. 448; 106 Wisc. 434; 4 L. R. A. (N. S.) 485; 73 N. Y. 543; 162 Mass. 319.

2. The damages were excessive. 172 S. W. 872; 78 *Id.* 553; 82 *Id.* 289; 103 *Id.* 361; 73 Tex. 47; 48 L. R. A. (N. S.) 38.

3. The assault was an independent act of the servant. 63 Wash. 593; 58 Minn. 218; 72 Miss. 32; 44 Neb. 732; 62 N. H. 436; 96 Mo. 299; 142 Cal. 681; 113 Ga. 1105; 50 Mo. 104; 1 East 106; 180 Am. St. 154; 38 Ark. 407.

4. In the *Jackson* case, the damages are excessive. If an agent go beyond the range of his employment, the master is not liable. 30 Am. St. 32; 3 Hurl & C. 256; 32 L. R. A. (N. S.) 1201; 154 Mass. 238; 13 L. R. A. 97; 32 L. R. A. (N. S.) 1209; 135 Ky. 438; 111 Ark. 337.

*Nixon & Levine* and *H. K. Toney,* for appellees.

1. There is no error in the charge to the jury. Taken as a whole, the instructions cover every phase of the case.

2. The damages are not excessive. 172 S. W. 872; 87 Ark. 127.

KIRBY, J., (after stating the facts). Appellant contends that the verdict of the jury awarding compensatory damages in the *Patterson* case is excessive, and that exemplary damages can not be recovered in any event for

the malicious tort of its servant, acting it is claimed without the scope of his employment.

Some instructions are also complained of that will be discussed later.

The passenger, Patterson, was thrice fiercely assaulted and without provocation, as the jury might have found, by appellant's train porter after he had taken his seat in the car and bruised and beaten until he was "as bloody as a stuck hog," as some of the witnesses expressed it. In addition he was so frightened by the conductor of the train coming into the coach with a pistol in his hand, accompanied by the porter, to quell the disturbance that he jumped from the moving train and struck on his head on the ground, cutting a gash therein three or four inches long to the skull. He was treated by two or three physicians for the severer injury, one of whom testified that the wound on the head suppurated and did not heal rapidly.

It is claimed that the jury might have made the excessive award of compensatory damages because instruction numbered 4, mentioned what might be taken into consideration by them where the injury appeared to be of a permanent or continuing character. We do not think this instruction open to the objection that it submitted to the jury the question of damages for a permanent injury, and if it did, no prejudice could have resulted therefrom, since the verdict was returned for only $200, an amount which the jury might well have allowed for the beatings alone, without taking into consideration the serious gashing of appellee's head.

The jury found that this passenger was not negligent in jumping from the train, under the existing condition and necessarily the railroad company was liable for damages for injury occasioned thereby, and an allowance of $200 is not only not excessive, but small compensation for the injuries suffered. The porter assaulted and struck this passenger before he got into the coach and without reasonable provocation disclosed by the testimony, and later after the passenger had seated himself in the coach

and the train had departed from the station and without any provocation whatever resumed the difficulty, and thrice assaulted and beat the passenger, finally procuring a heavy iron coal shovel and threatening to kill him therewith, after having advanced with this drawn weapon, to within striking distance of him. The train auditor only once spoke to the porter, upon the first separation of the combatants and told him to "cut it out," and then continued the collection of fares and made no further effort to prevent the difficulty or to protect the assaulted passenger, notwithstanding he was in the coach during the whole time.

A flagrant case of wanton abuse of a passenger and disregard of the carrier's duty to render him protection against the wilful misconduct and assault from its servant, whose duties related to the comfort and safety of the passenger, is disclosed by the testimony.

(1)   In *Pine Bluff & Arkansas River Railway Company* v. *Washington,* 116 Ark. 179, a case where exemplary damages were awarded to a passenger, who was shot by the brakeman while seated in the car, because she declined to agree to stop over at another station than her destination and spend the night with him, the court announced its approval of the following general rule of liability for exemplary damages for torts committed by servants of corporations.

"A corporation may be held liable to exemplary or punitive damages for such acts done by its agents or servants acting within the scope of their employment as would if done by an individual acting for himself render him liable for such damages," and, after reviewing our own cases, said:

"It may therefore be taken as settled law in this State that punitive damages may be awarded against a railway corporation for the wanton and malicious torts of its servants, although the corporation, aside from the conduct of its servants may be entirely blameless."

The porter's duty required him to come in contact with the passengers, and related to their safety and com-

fort, and the railway company was liable for his wrongful and wanton conduct which can not be said to have been beyond the scope of his employment. *Moore* v. *La. & Ark. Ry. Co.,* 99 Ark. 235.

In the *Jackson* case, it is contended that the court erred in giving over appellant's objection, instruction numbered 5, which tells the jury "that if Jackson was a passenger upon the defendant's train, and the porter precipitated or brought on a row with another passenger, which caused a fight to take place between the porter and said other passenger, during which said other passenger fired a shot with a pistol at said porter, wounding the plaintiff in his shoulder, and that this plaintiff had nothing to do with said conflict between the porter and the other passenger, then your verdict will be for the plaintiff in this case, etc."

(2)   Carriers of passengers, it is true, are not absolute insurers of the safety of their passengers against injury and ill treatment from other passengers. *Chicago, R. I. & P. Ry. Co.* v. *Brown,* 111 Ark. 288; *St. Louis, I. M. & S. Ry. Co.* v. *Dowgiallo,* 82 Ark. 289; *Goddard* v. *Grand Trunk Ry.,* 57 Me. 202; *Chicago & E. Rd. Co.* v. *Flexman,* 103 Ill. 546; *Penny* v. *Atlantic Coast Line Rd. Co.,* 32 L. R. A. (N. S.) 1209.

Such is not the rule, however, in case of injury resulting to the passenger from the misconduct of its servants, it being an insurer of the safety of the passenger against wilful assaults and intentional ill treatment of its servants, for whose acts it is responsible. *St. Louis & S. F. Rd. Co.* v. *Kilpatrick,* 67 Ark. 47; *Ry.* v. *Dowgiallo, supra.*

(3)   The testimony herein shows that the porter assaulted and beat the other passenger without provocation, the fight lasting for some time with intermissions, that finally the porter renewed it the third time, advancing with an iron coal shovel to within striking distance of the passenger and threatening to kill him, when the passenger, to protect himself, fired the shot that inflicted the injury upon the plaintiff in this case.

The auditor of the train was in the coach during the whole time, and but for saying, upon the first separation of the combatants, to the porter, "cut it out," made no effort to stop the difficulty and protect the assaulted passenger nor the other passengers in the coach.

It is not to be expected that a passenger will submit to continued violent and unprovoked assaults from the servant of a railway corporation, and the servants in charge of the train knew of the difficulty, and should have anticipated that injury might result to other passengers because thereof, and the carrier's duty required it to protect such other passengers from resultant injury whether inflicted by its servant in the assault, or unintentionally by the assaulted passenger, in protecting himself against the wrongful assault of the servant.

In other words, the wilful assault and intentional ill treatment of the passenger, Patterson, by the porter may be said to have been the proximate cause of the injury resulting to the passenger Jackson, who was accidentally shot by Patterson while trying to protect himself against such wrongful assault, for which the railroad company was liable. *Ry.* v. *Dowgiallo, supra.*

It is apparent that other passengers might be injured by shooting in the coach in which all were riding, and the train operatives were bound to anticipate that shots might be fired and such would be the result and take the steps necessarily required to prevent it. Not having done so, the railroad company is liable for the injury inflicted upon Jackson by the misdirected shot that failed to reach the porter, who provoked the difficulty. The court did not err in giving said instruction.

(4) Neither do we think the amount of damage awarded is excessive. The bullet buried itself in Jackson's shoulder and, although it was picked out by him, inflicted a wound that was painful, which required treatment from two different doctors and prevented his following his accustomed occupation for more than a month.

We find no prejudicial error in the record, and the judgments are affirmed.