POINSETT LUMBER & MANUFACTURING COMPANY v. LONGINO.

Opinion delivered May 26, 1919.

1. MASTER AND SERVANT — CONTRIBUTORY NEGLIGENCE — JURY QUESTION.—In an action for death of an employee from falling into a tank of boiling water, the question whether he was guilty of contributory negligence *held* under the evidence for the jury.

2. SAME—ASSUMED RISK—EVIDENCE.—Evidence held to support a finding that an employee who fell into a tank of boiling water had not assumed the risk of such injury, though he was one of two charged with the duty of closing the doors of the tank.

3. SAME—CONTRIBUTORY NEGLIGENCE—INSTRUCTION.—In an action for death of employee occasioned by falling into a tank of boiling water, instructions that plaintiff could not recover if he was guilty of negligence in being ignorant of the fact that the door of the tank was open was sufficiently favorable to defendant.

4. SAME—ASSUMED RISK—FELLOW SERVANT'S NEGLIGENCE.—By statute an employee does not assume the risk of negligence of a fellow servant.

5. SAME—CONTRIBUTORY NEGLIGENCE—JURY QUESTION.—In an action for death of an employee from falling into a boiling water tank, the question whether he was negligent in assuming that the door had been closed by a fellow servant *held* for the jury.

6. WITNESSES—COMPETENCY—PHYSICIAN.—In an action for death where the validity of a release executed by deceased while suffering from injuries was involved, testimony of his attending physician as to his mental condition at the time of executing the release was incompetent.

Appeal from Craighead Circuit Court, Jonesboro District; *R. H. Dudley,* Judge; affirmed.

*J. T. Kelley, Hughes & Hughes* and *Lamb & Frierson,* for appellant.

1. The danger from falling through an open door into the tank was patent and visible and was a risk assumed by Longino. 4 Thompson on Negligence, §§ 4608-10. Deceased was of full age and intelligent and accepted the risk knowingly. 5 *Id.,* § 4644. The rule laid down has been adopted by this court. 97 Ark. 486-8; 57 *Id.* 503; 105 *Id.* 526-532; 77 *Id.* 367 (374).

Plaintiff was experienced and intelligent. The danger was patent and visible and it was one of Longino's duties to keep the doors closed. When the doors were closed there was no danger and it was his duty to keep them closed. 122 Ark. 552 (556); 93 *Id.* 140 (152).

Instruction No. 8 was error and prejudicial. *Ib.;* 76 Ark. 69 (73); 104 Ark. 489 (498); 56 *Id.* 216 (221).

2. Since Longino's injuries resulted from a violation by him of a positive order, command and rule made for his protection, he cannot recover. The court sent the case to the jury upon the theory of comparative negligence, which has no place in this suit. 4 Thompson on Negl., § 4624. The violation of orders by the servant is the proximate cause of the injury as here. 180 S. W. 831 (834); 240 U. S. 444.

The correct rule is laid down in these cases. *Supra.* See also 124 Ark. 437 (448); 129 *Id.* 520; 18 R. C. L. 659, § 152; 155 N. W. 343-8; 103 N. E. 401 (403).

The court erred in giving and refusing instructions and on the evidence there could be no recovery. Cases *supra.*

Dr. Lutterloh's testimony was admissible. Kirby & Castle's Digest, § 3409. His testimony was competent and very important and its exclusion highly prejudicial.

*F. C. Mullinix* and *J. F. Gautney,* for appellee.

1. Dr. Lutterloh's testimony was properly excluded as incompetent.

2. Longino did not assume the risk of the negligence of any other servant of defendant. 97 Ark. 486; 77 *Id.* 367. He did not violate any command of the master.

3. Instruction No. 7 was a correct statement of the law. The one in 205 S. W. 695 is not similar and No. 9 states the law correctly. Under the law the negligence of the fellow servant is that of the master. Acts 1907, p. 163; Acts 1913, p. 734; 116 Ark. 189; 108 *Id.* 578. The evidence fully sustains the verdict. See cases *supra.*

SMITH, J. An instruction numbered 1 given by the court below states the issues of fact out of which this litigation arises, and we copy it as constituting in part a statement of the facts:

"1. In this case the plaintiff, Tom Longino, as administrator of the estate of Don Longino, deceased, sues the defendant, Poinsett Lumber & Manufacturing Company, to recover damages, and alleges that in connection with the operation of defendant's business in the town of Trumann, it has a series of tanks so constructed as to hold boiling water, and that said tanks are enclosed by movable covers over the same, said covers being so constructed that they may be raised or lowered by means of weights; that said tanks are at all times kept closed by said covers except when the employees of the defendant company are engaged in placing timber in them to be steamed, or taking timbers from them before being manufactured. Plaintiff alleges that on the 14th day of December, 1916, his intestate, Don Longino, was in the employ of the defendant

company, and while in the discharge of his duty, and without fault upon his part, and under the direction of the person in authority and control, was required to go to a place at or near the end of said row of tanks and in undertaking to perform said duty fell into one of said tanks containing boiling water and as a result thereof was injured, from which injuries he died on the 4th day of March, 1917; that said injury was the result of the carelessness and negligence of the agents, servants and employees of said defendant in failing to keep the door of the tank into which deceased fell, closed, and in carelessly and negligently allowing the same to remain open; that the conditions of the door of said tank was unknown to said deceased and could not have been known to him in the exercise of ordinary care for his own safety.''

We adopt the designations employed in the instruction set out and will refer to the injured servant as the deceased and to the corporation by which he was employed as the defendant. The injury of deceased, and his death as a result of his injuries, is admitted, but the defendant denies that it was guilty of any negligence, and alleged that the danger of falling into the tank was obvious and was a risk assumed by the deceased, and that deceased fell into the tank as a result of his own carelessness or of some accident for which it is not responsible. Complaint is made of certain instructions given by the court over defendant's objection. And it is also insisted that no case was made for submission to the jury. And, in addition to these defenses, it is insisted that the court erroneously excluded certain testimony relating to the mental capacity of deceased at the time he executed a release to the defendant, which was offered in evidence.

Deceased was a man of intelligence, thirty-two years old, and, according to the testimony offered on behalf of his administrator, had begun work on the day preceding his injury about noon and was injured about 6:40 a. m. the next day. There were twenty-six of these tanks, and in obedience to the order of his foreman deceased went

to the opposite end of the row of tanks to deliver an order and in returning fell into one of the tanks by reason of the door having been left open by some employee other than deceased. The steam arising from the tanks with the fog which it formed, combined with the lack of light at that hour of the day, rendered it impossible for him to see the open tank and thus avoid the injury. Deceased's screams attracted the attention of one Wood, his fellow servant, who pulled deceased from the tank of boiling water, and as he did so deceased asked who had left the door of the tank open. Deceased and Wood were designated as hookers, it being their business to fasten the hooks into the blocks, that were being manufactured, for the purpose of drawing them out of the tanks. On the part of the defendant the testimony was to the effect that it was the duty of deceased and Wood to open and close the doors of the tanks on which they were working, and that only one tank was supposed to be open at a time, and that if for any reason any other door was open it was their duty to close it. That the order to this effect was given, not only to keep the water boiling hot, but to prevent employees from falling into the tanks.

The court gave a very elaborate charge, and the instructions told the jury that no recovery could be had if it was the duty of deceased to close the door of the tank into which he fell, unless the door had been left open by some employee of defendant other than deceased and deceased did not know and in the exercise of ordinary care could not have known that the door had been left open. So that the case was submitted to the jury to determine whether or not deceased had left the door open and, if not, whether he was guilty of negligence in having failed to close it. And a recovery would also have been denied under the instructions given if deceased had been guilty of negligence in falling into the tank, although he did not leave it open and was not guilty of negligence in failing to see that it was closed. These were the questions of fact which have been resolved against defendant by the verdict of the jury.

The circumstances stated made a question for the jury whether deceased was guilty of contributory negligence; and likewise supported the finding, which the jury must have made, that the injury was not the result of one of the assumed risks of the service.

It is very earnestly insisted that no recovery should be had because the injury had resulted from the deceased's violation of a rule or order promulgated for his own protection and that of other employees, in that he did not see that the door of the tank not at the time in use was closed. But the jury was told that if it appeared from the evidence that it was the duty of the deceased to close the door of the tank into which he fell, and that he failed to do so, then there would be no liability on the part of the defendant for the injury sustained. The court properly refused to tell the jury that there could be no recovery if Wood, or some other employee, left the door open, because an instruction to that effect would have imposed upon deceased the assumption of the risk resulting from the negligence of a fellow-servant, and employees of corporations have been relieved by statute from the assumption of that risk. The instructions did tell the jury that no recovery could be had if deceased was guilty of negligence in being ignorant of the fact that the door was open, and the defendant was not entitled to a more favorable declaration of the law.

There was testimony to the effect that it was the duty of deceased and his fellow-servant Wood to remain at the mill until 6 p. m., when all other employees had quit work for the day, and before leaving the mill to see that the doors of all the tanks were closed, and instructions were asked, and refused, which declared the law to be that deceased could not recover "if he did not perform this duty and that one of the doors which he should have closed was left open and that on the following morning he fell through such door into the tank and was burned." But, as has been stated, two employees were charged with the duty of closing the doors and of seeing that they were closed. There were twenty-six of these tanks, and the

duty of closing their doors was not to be discharged by deceased alone, but by him and his fellow-servant, and inasmuch as the deceased was not charged with the assumption of the risk of his fellow-servant's negligence the jury had a right to pass upon the question whether deceased was negligent in assuming that his fellow-servant had discharged his duties in closing the doors which deceased himself had not closed. Deceased did not in fact assume the risk of injury from Wood's negligence in leaving the door open unless he knew or in the exercise of ordinary care should have known that Wood had been guilty of negligence in leaving the door open, and the law on this question was fully declared in the instructions given. Instructions given told the jury there could be no recovery if deceased had himself left the door open or was guilty of negligence in failing to see that it was closed, and defendant had no right to ask a more favorable declaration of the law.

After his injury deceased was sent to a hospital in Jonesboro, where he endured suffering beyond description; yet after about thirty days' treatment he had sufficiently improved to make it apparently safe to send him to the home of his father, where he greatly desired to go. Before leaving the hospital he executed a release, which was attacked at the trial upon the ground that deceased did not understand and appreciate the effect of his action in signing it; and testimony was offered to that effect which was legally sufficient to sustain the jury's finding that the deceased did not appreciate the effect of his action when he signed the release, as the instructions told the jury there could be no recovery if deceased did understand and appreciate the nature, quality and effect of his act in signing the release. The defendant first called the attending physician to prove by him that the deceased's mental condition was such that he appreciated the nature of his act in signing the release; but objection was made to this testimony on the ground that the answer to that question would be based upon information which the physician had acquired from the patient while

attending him in a professional capacity and which was necessary to enable him to prescribe as a physician. The physician testified that he was present at the time the release was signed, not for the purpose of then treating the patient, but for the purpose only of seeing that the patient was properly packed on the cot on which he was to be shipped to his father's home. The physician would have testified—had he been permitted so to do—that in his opinion the deceased knew and appreciated what he was doing when he signed the release. This testimony was properly excluded, as the witness had been the attending physician from the time he first saw deceased immediately after the injury until deceased left the hospital, and any information he had or any opinion he may have expressed would have been based upon information thus acquired. *Triangle Lumber Co.* v. *Acree,* 112 Ark. 534.

No error appearing, the judgment is affirmed.