POWER MANUFACTURING COMPANY v. SAUNDERS.

Opinion delivered November 2, 1925.

1. CORPORATIONS—VENUE OF ACTION AGAINST FOREIGN CORPORATION.—Crawford & Moses' Dig., § 1829, *held* not invalid as imposing a condition precedent on which a foreign corporation may have access to the courts of the State, as it merely prescribes the venue of actions brought against such corporations.

2. CONSTITUTIONAL LAW—VENUE OF ACTION AGAINST FOREIGN CORPORATION.—Crawford & Moses' Dig., § 1829, providing that service of process upon an agent of a foreign corporation designated in § 1826 for service of process may be had in any county in the State, is not unconstitutional as violating Const. Ark., art. 12, § 11, or Const. U. S., art. 1, § 10, or Amendment 14.

3. MASTER AND SERVANT—ASSUMED RISK—JURY QUESTION.—Where plaintiff was injured when his heel caught in a crack in a loading platform while he was assisting in loading machinery in a car, though he had been in defendant's employ for 11 months as field man, but had never helped load machinery before, it cannot be said as a matter of law that he assumed the risk from the defective platform.

4. APPEAL AND ERROR—INVITED ERROR.—Where appellant requested an instruction on assumption of risk, he could not complain on appeal that there was no evidence on such issue to go to the jury.

5. MASTER AND SERVANT—NEGLIGENCE OF FELLOW SERVANTS—JURY QUESTION.—In an action for injuries received when a flywheel, which plaintiff and two fellow servants were loading in a car became overbalanced and fell on plaintiff, evidence as to the action of such fellow servants in pushing on the wheel *held* to make a case for the jury.

6. RELEASE OF DAMAGES—VALIDITY.—Where plaintiff signed a release of his damages by reason of personal injuries at a time when

his fever was 103 and when because of pain he had not slept for 19 days, and then had 11 drainage tubes in his leg, it was a jury question whether he had capacity to make a binding contract of release.

Appeal from Saline Circuit Court; *Thomas E. Toler,* Judge; affirmed.

*Geo. C. Lewis* and *Buzbee, Pugh & Harrison,* for appellant.

*W. R. Donham,* for appellee.

SMITH, J. Appellee, who was the plaintiff below, was, at the time of the institution of this suit, a resident and citizen of Cincinnati, Ohio, and appellant, the defendant below, is a corporation organized under the laws of that State and having its principal place of business in Marion, Ohio.

Appellant has been duly authorized to do business in this State, and operates at Stuttgart, in Arkansas County, Arkansas, a warehouse, from which it delivers machinery to the purchasers thereof. On March 27, 1922, plaintiff was employed by the defendant at its warehouse in Stuttgart, in conjunction with two other employees of defendant, in rolling a heavy fly-wheel, weighing about four thousand pounds, and about six feet in diameter, on the floor of the warehouse for the purpose of loading the wheel into a railroad car, to be shipped to a party who had purchased the wheel, and, while so engaged, the wheel became overbalanced and fell on plaintiff, and inflicted a very serious injury. This suit was brought to recover damages to compensate this injury.

Defendant moved the court to quash the service of summons and to dismiss the complaint for the want of jurisdiction, for the reason that the plaintiff, at the time of the accident, was a resident and citizen of Arkansas County, where the injury occurred, and where the defendant conducted its business in this State. Defendant did not maintain an office or conduct business in any other county in this State. The suit was brought in Saline County, Arkansas, and it was alleged, in the motion to

dismiss, that neither of the parties to this suit, nor any of the witnesses in the case, resided in Saline County, and that it would involve the expenditure of a large sum of money for the defendant to arrange for the attendance of its witnesses in that county. It was therefore alleged in the motion to dismiss that it would be a discrimination against the defendant to require it to defend the suit in Saline County, and that § 1829, C. & M. Digest of the statutes of the State, which permitted the suit to be brought in any county in the State, violated that part of article 12, § 11, of the Constitution of the State, which provides that foreign corporations shall be subject, as to contracts made or business done in this State, to the same regulations, limitations, and liabilities as like corporations of this State, and that said section of the statutes of the State impaired the obligation of the contract created by the Constitution of the State, and is therefore void under § 10, article 1, of the Federal Constitution, and it was further insisted that the statute is in violation of the provisions of the Fourteenth Amendment to the Constitution of the United States, prohibiting a State from depriving any person within the State of his or its property without due process of law, or denying to any person within its jurisdiction the equal protection of the law.

The motion to quash the summons and to dismiss the action for want of jurisdiction was overruled, and this ruling of the court is assigned as error.

Appellant concedes that the motion to dismiss was properly overruled if § 1829, C. & M. Digest, is valid and constitutional, but, as was set forth in the motion, the constitutionality of that statute is challenged as violative of both the State and Federal Constitutions. The section of the statute in question reads as follows: "Section 1829. Service of summons and other process upon the agent designated under the provisions of § 1826 at any place in this State shall be sufficient service to give jurisdiction over such foreign corporation to any of the

courts of this State, whether the service was had upon said agent within the county where the suit is brought or is pending or not." ·

The question presented is an interesting one, but was decided adversely to appellant's contention in the case of *Pekin Cooperage Co.* v. *Duty,* 140 Ark. 135. The points here raised were there presented, and we there said that the statute provided a method of procedure whereby foreign corporations which had complied with the laws of the State authorizing them to do business in the State might be sued, and that a local or county residence had not been given such corporations, and that the statute did not impair any constitutional rights of foreign corporations or discriminate against them, but had only provided the forum in which they might be sued, as they had been given no local residence in the State.

It is earnestly insisted, however, that this case should be reconsidered and overruled, in view of the decision of the Supreme Court of the United States in the case of *Kentucky Finance Corporation* v. *Paramount Auto Exchange Corporation,* 262 U. S. 544. In that case there was involved the validity of a statute of the State of Wisconsin, which provided that a foreign corporation not domesticated or doing business in that State or having property there other than that sought to be recovered in the particular action may be compelled, as a condition to the maintenance of its action, to send an officer of the corporation, with its books and papers bearing on the matter in controversy, from its domicile to the State of Wisconsin, where the action was brought, in order to submit to an adversary examination before the party sued should be required to answer. The statute did not subject nonresident individuals to such examination except when served with notice within the State, and then only in the county where service was had, and limited the examination, in the case of residents of the State, individual or corporate, to the county of their residence.

The statute was upheld by the Supreme Court of Wisconsin (171 Wis. 586), on the ground that it amounted to no more than a reasonable exercise of the authority of the State over a nonresident corporation coming voluntarily into the State to seek a remedy in the courts of that State against a resident defendant.

The case was appealed to the Supreme Court of the United States, where the view of the Supreme Court of the State of Wisconsin was disapproved, and Mr. Justice Vandevanter, speaking for the Supreme Court of the United States, said the statute violated the equal protection clause of the Federal Constitution by imposing a rule more onerous on foreign corporations than was applicable to nonresident individuals in like situation, and was also more onerous than that applicable to resident suitors, whether individuals or corporations.

Our statute, under our interpretation of it in the cases herein cited, is not one imposing burdens as a condition precedent upon which foreign corporations may have access to the courts of the State, but is one of procedure, prescribing the venue where actions may be brought against foreign corporations by any one, resident or nonresident.

We adhere, therefore, to our former interpretation of the statute and approve the action of the trial court in overruling the motion to dismiss. *American Hardwood Lbr. Co.* v. *Ellis & Co.,* 115 Ark. 524; *Pekin Cooperage Co.* v. *Duty, supra; Missouri State Life Ins. Co.* v. *Witt,* 165 Ark. 604.

It is next insisted that the court erred in submitting to the jury the question of the defective condition of the floor of the warehouse on which the wheel was being rolled as constituting actionable negligence. The testimony shows that the floor of the platform was constructed of two-inch planks, laid with open cracks, and that, as the wheel was being loaded into a car, it became overbalanced and started to fall, and as plaintiff attempted to get out of the way the heel of his shoe caught

in one of the cracks, which was about three inches wide, and while he was thus entrapped the wheel fell over on him.

It is insisted that the alleged defect was structural in its nature, and that the plaintiff had been employed by defendant for about eleven months and should have been charged, as a matter of law, with the assumption of the risk of an injury from a danger so obvious. It is true that plaintiff had been employed by the defendant for about eleven months, but it is also true that he had been employed as a field man or "trouble shooter" in the rice fields, where the machinery sold by defendant was installed, and it was the business of plaintiff to install the machinery and to report and remedy any defects which developed in the machinery so installed, and plaintiff testified that he had never before assisted in loading a wheel or other machinery from the warehouse into a car. We are unwilling to say, as a matter of law, that plaintiff assumed the risk of injury from the defective condition of the platform. Moreover, defendant requested instructions submitting this issue to the jury, and it cannot, therefore, complain that this was done.

The case was submitted to the jury also on the question of the negligence of appellee's fellow-servants. The instructions on this issue are not questioned as correct declarations of law, but it is insisted that the testimony did not warrant the submission of the issue to the jury. The testimony of appellee touching the cause of his injury was to the following effect. He and two other employees had loaded the base of the engine and the boxed parts thereof into a car, and were proceeding to load the fly-wheel. In rolling the fly-wheel from the platform. which joins the warehouse, they had it on a plank laid crosswise on the floor, and the plank rested on the top of the car floor, and, in order to get down to the level of the car floor, so as not to have a drop, plaintiff laid another plank by the side of the one extending into the car. They had turned the wheel crosswise to

roll it on to the second plank. Plaintiff was on the side next to the warehouse, and the other two men were on the opposite side of the wheel, and in rolling it these two men pushed the wheel beyond the balancing point, and when they did so they released their hold on the wheel and yelled to plaintiff to get out of the way. Plaintiff attempted to hold the wheel until he could get out of the way, and while endeavoring so to do his heel caught in one of the cracks in the floor of the platform. Plaintiff alone could not restore the wheel to a balance, and it fell over on his leg and crushed it.

The case is not unlike the recent case of *Texas Pipe Line Co.* v. *Johnson, ante* p. 235, and is controlled by the principles there announced. In that case an employee, in conjunction with four other employees, was engaged in laying a pipe line for running oil into a main pipe line. The pipe was being carried with carrying-irons, and one of the employees released his hold on the carrying-iron, thus throwing, unexpectedly, the weight of the pipe on the plaintiff in that case. We said the jury was warranted in finding that this action of the fellow-servant was negligence. So here we think the jury was warranted in finding that the action of plaintiff's fellow-servants in so pushing on the wheel as to overturn it was negligence.

It is finally insisted that the jury should have been instructed to return a verdict for the defendant upon the ground that, for a valuable consideration, the plaintiff had released defendant from further liability. Appellee responds to this insistence by saying, first, that the release should be so construed as applying only to certain specific items of damage therein referred to. Appellee further insists that the testimony warranted the jury in finding that at the time the release was signed he was incapacitated to contract because of his suffering from his injury. This question was submitted to the jury under correct instructions, and the finding of the jury is conclusive of this issue of fact. We do not, therefore, review the language of the release itself.

Appellee testified that he had discussed with appellant's adjuster only the payment of hospital bills and doctor's fees and certain other items. That, while he glanced over the release before signing it, he did not understand that it attempted to release his claim for damages. That he had not slept for nineteen days except a few minutes at a time, and then only when under the influence of an opiate, and at the time he signed the writing there were eleven drainage tubes in his leg and he had a temperature running as high as 103.

Under these circumstances it was a question for the jury to determine whether plaintiff had the capacity to make a binding contract of release. *St. L. I. M. & S. R. Co.* v. *Brown,* 73 Ark. 42; *Bearden* v. *St. L. I. M. & S. R. Co.,* 103 Ark. 341; *St. L. I. M. & S. R. Co.* v. *Reilly,* 110 Ark. 182; *Harris Lbr. Co.* v. *Morris,* 80 Ark. 260; *Trumann Cooperage Co.* v. *Crye,* 137 Ark. 293; *St. L. I. M. & S. R. Co.* v. *Sandidge,* 81 Ark. 264; *Poinsett Lbr. & Mfg. Co.* v. *Longino,* 139 Ark. 69.

What we have said disposes of appellant's contention that a verdict should have been directed in its favor under the undisputed evidence.

It is not insisted that the verdict is excessive, and, as we find no prejudicial error in the judgment, it is affirmed.