INTERURBAN TRANSPORTATION COMPANY, INC. *v.* REEVES.

4-4695

Opinion delivered June 21, 1937.

*E. W. Moorhead,* for appellant.
*E. W. Brockman,* for appellee.

BUTLER, J. This action was begun in the court below to recover damages for personal injuries to appellee while a passenger on the bus of appellant company. There was a verdict in favor of the appellee in the sum of $2,500. Motion for a new trial was filed and overruled and a judgment entered for the amount named in the verdict, from which is this appeal.

The assignments of error argued are (1) that there was no negligence shown on the part of the defendant in the court below, (2) that there was error in excluding certain evidence and in giving instructions Nos. 3 and 7 requested by the appellee, plaintiff below, and (3) that the verdict is excessive.

The complaint in effect alleged that on the afternoon of December 30, 1935, appellee was a passenger on the bus of appellant company and, while in the exercise of due care for her own safety, was injured by the negligence of an employee of the appellant who let a heavy suitcase fall from the rack immediately above where she was sitting, striking her head and neck with such force as to cause serious and permanent injury to her. The answer denied the allegations of the complaint and pleaded as an affirmative defense contributory negligence on the part of appellee.

Although the evidence is in conflict, we think it tends to establish the following facts, which we summarize: appellee purchased a ticket at Pine Bluff for transportation by appellant's bus to the village of Yorktown in Lincoln county. At this particular time the traffic was heavy over appellant's bus line from Pine Bluff south and it was necessary to operate an extra bus. These busses left Pine Bluff going south on the afternoon of December 30, 1935, one following the other after a comparatively short interval. It is not clear which one was boarded by the appellee. A negro man, wearing a cap which indicated to the minds of the passengers that he was a porter, was on the bus in which appellee was riding. Appellee's seat was near the front of the bus and between stops the negro man would take his place by the driver. At Pine Bluff he assisted the passengers in boarding the bus, placed the baggage in proper place

in racks constructed above the passenger seats, and, at the different stops, he unloaded the baggage for such passengers as disembarked, continuing to do this as far south as Star City. Whether he remained on the bus until it reached the terminus of its destination is not shown. At one of the stops, while removing baggage from the rack directly above the seat occupied by appellee, he let a suit case fall which struck her on the neck and shoulder.

A witness, who was a passenger on the bus when the suit case fell upon appellee, testified that she had traveled on the same bus two weeks before and that on that occasion a negro man acted as porter—that is, he assisted the passengers on and off the bus when necessary, loaded and unloaded baggage—who, witness thought, was the same as the one who performed the duties of porter on the afternoon of appellee's injury. The proof further shows that on several occasions negroes were permitted to ride the bus free acting in the capacity of porter.

The two drivers, who operated the busses going south from Pine Bluff on the afternoon of December 30, 1935, testified that they had no recollection that appellee was a passenger on either bus; that there were no porters loading and unloading baggage or assisting passengers in boarding and alighting and that they were not informed and did not know of any one claiming to have been injured. They admitted that on certain occasions they would allow persons to ride in consideration of their services as porter:

There was evidence to the effect that the negroes who assisted in the loading and unloading of the busses of appellant company at Pine Bluff and Little Rock were not employees of that company, but of independent transportation companies whose stations were used by appellant.

Mr. T. C. Ward became the general manager of the appellant in February, 1936. The accident to appellee was reported about the 26th of that month and an investigation made regarding it. Testifying as to this in-

vestigation, Mr. Ward stated that his company did not employ porters and that if any such were employed it was without his permission; that he learned on definite inquiry that no porters had ridden on any of the busses prior to the preceding holidays.

No one of appellee's fellow-passengers on the afternoon of her injury testified that the negro man acting as porter was an employee of appellant company. They testified merely as to his actions and what they inferred from them. This testimony, together with that of the drivers to the effect that they had no porters on that occasion, is the basis for appellant's contention that appellee has failed to discharge the burden of proving that the negligence resulting in injury to her was the act of an employee of appellant. Appellant relies on the rule that public carriers are not insurers of the safety of passengers, *St. Louis I. M. & So. Ry. Co.* v. *Jackson,* 118 Ark. 391, 177 S. W. 33, L. R. A. 1915E, 668; *St. Louis I. M. & So. Ry. Co.* v. *Tukey,* 119 Ark. 28, 175 S. W. 403, L. R. A. 1915E, 320; 10 C. J. 900, and, therefore, before the appellant's liability can be established, it must be proved that the negligent act from which the injury flowed was that of one of its employees.

It is argued that the jury is not permitted to speculate upon this question and that a judgment will be reversed where the verdict is based upon such speculation. To sustain this contention, many of our own cases are cited, and it must be admitted that these sustain the rule that a verdict must not be based upon conjecture or speculation. This rule is well settled and a citation of the authorities relied upon by appellant is unnecessary. It is our opinion that the evidence on these points raises the questions above the realm of speculation and is sufficient to justify the inference that the relation between the negro man who acted as porter and the appellant was that of employer and employee, and that it was the negligence of the employee which caused appellee's injury, notwithstanding the testimony of the drivers. It is true, the general manager of appellant testified that the company used no porters on the bus

line in question, and that if drivers employed any such it was done in violation of the rules of the company and not with his permission. It will be noted, however, that, on December 30, 1935, this witness had no connection with appellant company; and his testimony, therefore, was hearsay in its nature insofar as it related to the rules of the company prior to his employment. He did not offer any written rule or, by competent testimony, show the date of the promulgation of the rule about which he testified.

Three witnesses testified that on previous occasions they had been permitted by the driver of the bus to act as porters, but each denied that he was acting as porter at the time appellee was said to have been injured.

It is well settled that facts may be established by circumstances which will at times prevail over direct proof. There was no competent testimony tending to show lack of authority of the drivers to permit persons to act as porters at times and to give such persons free rides for services rendered. The proved circumstances justify the reasonable inference that the supposed porter on the bus on which appellee was a passenger on the afternoon of her injury was a special employee of appellant company for whose negligence appellant is liable.

It seems to be the established rule that where a servant is engaged in the performance of his duties, the master will be liable, although the particular act complained of is unauthorized or even where such act is contrary to express direction. *Terry Dairy Co.* v. *Parker,* 144 Ark. 401, 223 S. W. 6; *Healy* v. *Cockrill,* 133 Ark. 327, 202 S. W. 229, L. R. A. 1918D, 115; *Campbell Baking Co.* v. *Clark,* 175 Ark. 899, 1 S. W. (2d) 35; *Federal Compress & Warehouse Co.* v. *Jones,* 180 Ark. 476, 21 S. W. (2d) 852; *Rex Oil Corp.* v. *Crank,* 183 Ark. 819, 38 S. W. (2d) 1093. In *Federal Compress & Warehouse Co.* v. *Jones, supra,* the master was held liable where the injury complained of was occasioned by the failure of a third person employed by the servant to perform a duty with which he was charged. In that case the defendant sent its servant, Harris, to get sacks of cotton for trans-

portation to defendant's compress. To accomplish this, Harris used a truck which he stopped by the side of the building where the cotton was stored and which was to be dropped from the third story to the sidewalk. The person dropping the sacks from the window was unable to see pedestrians on the sidewalk below and was dropping the sacks in accordance with signals to be given by Harris. Harris allowed a boy, who wanted to ride across the river with him to get on the truck and give these signals while he (Harris) was loading the cotton which had been dropped. The boy failed to warn a particular pedestrian of the danger in passing along the sidewalk and failed to signal the one dropping the cotton not to do so at that time.

In that case it was a contention for reversal that the servant, Harris, violated his instructions as to the manner in which he was to obtain the cotton, and that the particular act of negligence on the part of the boy in failing to give warning was that of a third party not in defendant's employ and a mere volunteer. This court denied that contention in the following language: "Neither can appellant's further contention, that its employee allowed a third party, a volunteer, to give signals to the employee of Randolph Scott & Company when to drop cotton from the third-story window and to warn pedestrians passing by against the danger, relieve it from liability in this case. It was negligence on the part of appellant's employee to substitute another to give the signals and warn the public." See, also, *Tchula Co-operative Store* v. *Quattlebaum*, 176 Ark. 780, 4 S. W. (2d) 919.

If we are mistaken in our analysis of the evidence in the instant case and the just conclusion to be drawn therefrom with respect to the status of the negro man who was acting as porter, we nevertheless believe that appellant is liable on broader grounds. We recognize the validity of the general rule stated in 39 C. J., 1272, and relied upon by appellant, which is as follows: "Where there is neither express nor implied authority given a servant to employ another to perform or to

assist him in the performance of his work, or a subsequent ratification by his employer of such employment, the relation of master and servant between the employer and one so employed by his servant does not exist and he is not liable for the negligent acts of the latter under the doctrine of *respondeat superior.*" The author of that chapter, "Master & Servant," however, after noticing the rule, *supra,* further says: "While some decisions hold, apparently without qualification, that no liability attaches to the master on any ground by reason of acts of one employed by a servant where such employment was neither authorized nor ratified, the weight of authority holds that the fact that the master cannot be held liable under the doctrine of *respondeat superior* does not necessarily absolve him from liability on other grounds, although the decisions are not in accord as to the circumstances which will impose liability."

The reason for this rule, as gathered from the cases dealing with it, seems to be that where a servant, charged with the performance of certain duties, delegates these to a stranger, but to be performed in his presence, such servant is deemed to be cooperating with such stranger and his negligence in law is that of the servant.

There are some cases holding that under any circumstances the master is not liable for the negligent act of a stranger employed by a servant where the servant has no authority, express or implied, to employ assistants and where such employment has not been ratified by the master. Typical of these are *Great Atlantic & Pacific Tea Co.* v. *Compton,* 164 Miss. 553, 145 So. 105, and *Cooper* v. *Lowry,* 4 Ga. App. 120, 60 S. E. 1015.

The exception to the general rule, quoted, *supra,* from 39 C. J. 1272, chapter "Master & Servant," is stated in the case of *Geiss* v. *Twin City, etc.,* 120 Minn. 368, 139 N. W. 611, 45 L. R. A. (N. S.) 382, as follows: "When the master intrusts the performance of an act to a servant, he is liable for the negligence of one who, though not a servant of the master, in the presence of his servant and with his consent negligently does the act which was intrusted to the servant." This rule appears

to be supported by the decided weight of authority and to be sound and reasonable, for, in its final analysis, the liability to be fixed upon the master grows out of the negligence of the servant to whom must be imputed the act of the stranger employed by him where that act is one done in the furtherance of the master's business and within the line of duty of the servant who procures such assistance. Such is the effect of the following decisions: *Althorf* v. *Wolfe,* 22 N. Y. 355; *Campbell* v. *Tribble,* 75 Tex. 270, 12 S. W. 863; *Simons* v. *Monier,* 29 Barb. (N. Y.) 419; *Booth* v. *Meister,* 7 Car. & P. 66; *Weatherman* v. *Handy,* (Missouri) 198 S. W. 459; *City of Indianapolis* v. *Lee,* 76 Ind. App. 506, 132 N. E. 605, and cases therein cited.

In White on The Law of Personal Injuries on Railroads, vol. 1, § 210, after noting the general rule that where the master is sued for the negligent act of another person it must be established that such person was an employee of the master in order to establish the master's liability, continuing, the author says: "But this rule does not obtain as to passengers, in all its strictness, for if the company, by reasonable care, could prevent an injury to a passenger, by preventing or having corrected, the acts of third persons, such as other passengers, or persons not in its service, and it fails to do so, it will be held liable, in case of a resulting injury, based upon the obligation of its special contract to safely carry the passenger, or accord him reasonably safe surroundings and facilities."

The facts in the case at bar, found by the jury to exist and established by substantial evidence, call strongly for an application of the doctrine announced in the authorities, *supra.* The driver was in sole charge of the operation of the bus and the care of the passengers. It was a part of his duty to give assistance to such of them as might need it, to dispose of their baggage and remove and deliver it when passengers reached their points of destination. In performing these duties he was obligated to the highest degree of care for the safety of his passengers compatible with the reasonable movements of

the bus. With respect to these duties he was clothed with all the authority of the master and his acts in their discharge must be deemed those of the master.

The evidence adduced in behalf of the appellee is ample to raise and sustain the inference that the supposed porter was one in fact. If he was not acting as a porter under express authority given by the driver, he was acting as such in the driver's presence and with his apparent consent. It will be remembered that appellee sat near the front of the bus or driver's end. Before the driver was a mirror which gave him a view of the bus and its occupants. The porter rode in front immediately by the driver. He would leave this position when the time arrived for discharging passengers and, after having removed and given them their baggage, would resume his place by the driver's side and there remain until occasions demanded the discharge of his duties as porter. The driver, by his knowledge and acquiescence in the supposed porter's conduct which was in the performance of duties of the driver, must in law be deemed to be cooperating with the porter, and whether such cooperation was active or passive is of no moment as it was such as to make the porter's act his own. In other words, the porter was a mere instrumentality used by the driver to discharge his duties. Therefore, the negligent act of the porter was that of the driver for which the master is liable.

The next ground urged for reversal is that the trial court erred in excluding certain evidence. On cross-examination of appellee, counsel for appellant asked the following question: ''Who suggested that you get a lawyer and make a claim against the bus company?'' On objection being made, counsel contended that it was pertinent for the purpose of testing the extent of appellee's injury and whether or not the claim for such was the result of the suggestion of another. No prejudice is shown by reason of the action of the court in sustaining the objection. The expected answer was not suggested, nor in fact do we see where any answer that might have been made could have been relevant to the question of the extent of appellee's injury.

A certain witness was asked: "What trouble had she been having before this Christmas that you saw her on the bus?" Counsel for appellee objected on the ground that it was not proper cross-examination. The witness, however, answered: "Not anything that I know of—not that I know of; the only thing, she was just old." Following this, counsel asked: "What trouble had she been having prior to this time?" At that juncture, the trial court stated that an objection had been made because such question was not proper cross-examination and that he thought the objection proper. Counsel said: "I didn't hear the court rule on it," and the court replied, "No, sir; I didn't at that time. I thought it was all over." Counsel for appellant complain of this ruling on the ground that it is not known, and the jury did not know what witness' answer would have been, which the court prevented, as to what trouble the appellee had been having before the Christmas when witness saw her on the bus. The last question, not allowed to be answered by the court, was but a repetition of the question which the witness did answer and we can see where no prejudice could have resulted from this ruling.

It is next contended that the trial court erred in giving instruction No. 3 which in effect told the jury that if it found from the weight of the evidence that a man performing the duties usually that of a porter or helper negligently removed a suitcase from the rack over the seat occupied by appellee, the jury had a right to presume that he performed such service with the consent of appellant company; also, that it was error to give instruction No. 7, requested by the appellee, by which the jury was instructed that if it should believe from a preponderance of the evidence that one, who, in a general way, assisted passengers on and off the bus, taking baggage therefrom with the knowledge and consent of the driver, was an employee of the appellant company which would be responsible for his negligent acts.

In view of the principles announced by the authorities cited, *supra,* which we approve, it cannot be said that these instructions requested and given were in-

herently erroneous. The specific objection to instruction No. 3 was that "the bus driver had no authority to employ a porter." From what has already been said, it necessarily follows that the specific objection was without merit. The court gave a number of instructions at the instance of both parties which we think fairly presented the law of the case to the jury.

It is finally insisted that the instruction given on the measure of damages was erroneous in that the trial court should not have submitted to the jury, for its consideration in determining the damages to be awarded, the permanency of appellee's injury, her disability arising therefrom and her future pain and suffering. This contention is based upon the unique theory that such elements of damage are improper because there was no evidence in the record as to appellee's life expectancy which was necessarily very short, and which it is said was not in excess of one and a half years. We think it proper to notice the objection to this instruction in considering the question as to whether or not the verdict is excessive. Appellant seriously contends that the evidence establishes only trivial injuries; but, to this, we cannot agree. It is undisputed that appellee, at the time of her injury, was ninety years of age, but of remarkable strength and vitality. Just before she was injured she was able to, and did, wait upon herself, perform her household duties unaided and milk her cow. She was healthy, strong and vigorous and it is reasonable to believe that she would have passed the remaining period of her life in comparative independence. Her physical strength was undoubtedly the result of a temperate and innocent life, and she had the right to pass the remainder of it in comfort and ease. By her injury this reasonable expectation has been destroyed, and the evidence clearly shows that she has suffered, and will continue to suffer, great physical pain and her ability to care for herself and to do the work she had been in the habit of doing, no longer exists. The proof is undisputed that the vertebrae of her neck has been seriously injured. Slivers, or bits, of bone were broken from it and she can no

longer rotate her head freely and without pain. The extent of the injury did not develop immediately, but it is undisputed that within a short time following the accident appellee's pain became so severe as to make the services of a physician imperative. She went to Pine Bluff where she was confined for several weeks suffering acute pain, so much so that the frequent use of morphine was necessary. The evidence is, also, undisputed that she still suffers great pain, and that she now requires the assistance of others in performing those duties necessary for the care of her person. It is undisputed that she will never recover and will pass the remainder of her life in an almost helpless condition and discomfort. We think the jury had the right to consider the permanency of appellee's injury, her present and future disability and the future pain she may endure, however short her life may be. We have frequently sustained verdicts for pain and suffering much in excess of the award made to the appellee, and, in our opinion, such verdict is not excessive.

Finding no reversible error, the judgment of the trial court is affirmed.