DIXIE MOTOR COACH CORPORATION *v.* TOLER, JUDGE.

4-5470 126 S. W. 2d 618

Opinion delivered March 27, 1939.

*C. E. Johnson* and *Pinnix & Pinnix,* for petitioner.
*Talley & Talley,* for respondent.

GRIFFIN SMITH, C. J. Petitioner asks that a temporary writ of prohibition be made permanent.

In an action brought in Hot Spring Circuit Court, John Hellen alleged he was a resident of the city of Hot Springs, in Garland county; that the defendant, Dixie Motor Coach Corporation, is a foreign corporation authorized to do business in Arkansas; that plaintiff purchased a bus ticket at defendant's station in Hot Springs good for transportation from that city to Pitman's Service Station; that he was unfamiliar with the highways and did not know when the bus arrived at the station; that Hubbard, in charge of the bus, failed to call the destination, but proceeded to a point four and one-half miles beyond, then demanded fifteen cents as additional fare; that such amount was paid; that concurrent with payment plaintiff asked how much farther it was to the station and was informed by Hubbard it had been passed; that he (plaintiff) asked to be taken back to the station, whereupon ". . . [Hubbard], with great violence and force, grabbed plaintiff by the shirt, tearing it, and at the same time kicked the plaintiff in the side, injuring him, . . . and by use of great force put this plaintiff off the bus."

Summons was issued by the clerk of Hot Spring Circuit Court. It was served on Virgil East, ". . . driver of coach, [in] Hot Spring county."

The court overruled a motion to quash. Defendant procured temporary prohibition.

Was the service effective?

Act 98, approved April 1, 1909,[1] provides a method for obtaining service on all foreign and domestic corporations which maintain a branch office or other place of business in any of the counties of this state.[2] Plaintiff says the attempted service was had under authority of Act No. 70, which became a law February 26, 1935, without the Governor's approval.[3]

---

[1] Act No. 98 of 1909 appears as § 1369 of Pope's Digest.

[2] While *Powers Manufacturing Company* v. *Saunders*, 169 Ark. 748, 276 S. W. 599, 274 U. S. 490, 47 S. Ct. 678, 71 L. Ed. 1165, is not involved in the instant case, Act 98 of 1909 was the statute pointed to by the Supreme Court of the United States as creating the discrimination upon which the reversal was predicated. . . . .

[3] Act 70 of 1935 appears as § 1377 of Pope's Digest. Section 1 is as follows: "When the defendant is the owner or the operator of

Section 2 of Act 70 provides that it shall not be so construed as to repeal existing venue or service statutes —except as to conflicts—the intent being to afford ". . . additional methods of obtaining service of summons as against the owners and operators of motor buses, coaches and trucks." Section 3 is the emergency clause.[4]

What necessity induced the General Assembly to provide additional methods of obtaining service?

Act No. 98 of 1909 permitted summons to be served on foreign or domestic corporations in any county where a branch office or other place of business was maintained, but trial was restricted to the county of service except in certain circumstances involving joinder. Act No. 70 does not affect Act 98.

It is insisted by petitioner that injuries sustained by the plaintiff did not result from operation of the bus; that ". . . there was the interposition of a separate, independent agency—the alleged altercation or re-encoun-

---

any motor bus or buses, motor coach or coaches, or motor truck or trucks, engaged in the business of carrying and transporting either passengers, freight, goods, wares or merchandise over any of the highways of this state, the service of summons may be had upon any such owner or operator by serving same upon any clerk or agent of any such owner or operator selling tickets or transacting any business for such owner or operator, or may be upon any driver or chauffeur of any bus, coach or truck being operated or driven by such driver or chauffeur as a servant, agent or employee of any such owner or operator, and service so had upon the agent or agents of any such owner or operator or had upon any such chauffeur or driver of any such bus, coach or truck being operated or driven by such driver or chauffeur as a servant, agent or employee of any such owner or operator shall be deemed and considered as good and valid service upon such owner or operator whether such owner or operator be a person, firm or corporation."

[4] The emergency clause, in part, is: "Whereas, many motor buses, coaches and trucks are being operated upon the public highways of this state and by reason of their operation persons are being injured and their property damaged and in many instances there is now no agent of the owner or operator of such vehicles upon whom service of summons can be had in counties through which same are being operated, therefore an emergency exists on account of such injuries and damages to persons and property and no adequate provision for service of summons existing, it is found that this act is necessary . . ," etc.

ter. . . . The right of action in this case, if any exists, must find its justification in the allegation that 'the defendant's employee, Tom Hubbard, with great force and violence, grabbed the plaintiff, John Hellen, by the shirt'," etc.

In The Law of Automobiles, by Berry, and in Blashfield's Cyclopedia of Automobile Law and Practice, the rule announced is:

"It is certain that the passenger has the right to pass from the conveyance at the end of his journey in safety— that is, free from the assault of the carrier's servants. Therefore, it would seem the principle attending the obligation continues to afford protection to the passenger until the further necessity of relations with the servants of the carrier at and in the vicinity of its conveyance as by way of settlement of the charge for the transportation is passed. Obviously the passenger may not be ruthlessly assaulted by the carrier's servants without liability on its part while in the very act of paying the charge of transportation. . . . Though the journey is ended, the passenger is clearly within the protection of the carrier and the relation continues until the settlement of fare is made and he is permitted by the carrier to take his leave in peace."[5]

"The carrier-passenger relationship imposes on the taxicab operator the obligation to protect the passenger from the insult or assault not only by outsiders, but by his own servants as well. Thus far the passenger has a right to the absolute protection of the carrier, and thus far the carrier is an insurer of his safety, to-wit, from such assaults or insults at the hands of its servants."[6]

We said, in *St. Louis, Iron Mountain & Southern Railway Company* v. *Jackson*,[7] that carriers of passengers are not absolute insurers of the safety of their passengers against injury and ill treatment from other passengers. "Such is not the rule, however, in case of injury resulting to the passenger from the misconduct of its servants, it being an insurer of the safety of the pas-

[5] Berry, The Law of Automobiles, vol. 6, p. 210.

[6] Blashfield's Cyclopedia of Law and Practice, vol. 4, § 2216.

[7] 118 Ark. 391, 177 S. W. 33, L. R. A. 1915E, 668.

senger against wilful assaults and intentional ill treatment of its servants, for whose acts it is responsible."[8]

If Act No. 70 was intended as a service statute, applicable to that class of cases illustrated by the instant suit, then it must be conceded plaintiff was injured by operation of the bus on a highway of the state, it being necessary for present purposes to look only to allegations of the complaint.

It was held in *Coca-Cola Bottling Company of Southwest Arkansas* v. *Bacon, Judge,*[9] that summons served in Nevada county on the defendant's truck driver in a suit alleging injuries from drinking contaminated Coca-Cola was void, the defendant's place of business being in Ouachita county, and it having no agent or place of business in Nevada county. In that case the law was declared to be: "Reading [Act 70] from its four corners, the mode or manner of service provided therein has application only to actions for damages to persons or their property occasioned by the negligent operation of motor buses, coaches or trucks, on the highways of this state."

We think, however, that § 3 of Act 70 shows the purpose for which the legislation was enacted. There, it is recited that through operation of motor buses and trucks upon the highways of the state, persons are being injured and their property ·damaged, ". . . and in many instances there is now no agent of the owner or operator of such vehicles upon whom service of summons can be had in counties through which same are being operated; therefore an emergency exists on account of such injuries and damages to persons and property, *and no adequate provision for services of summons existing, it is found that an emergency exists,"* etc.

In the case at bar the plaintiff is a resident of Garland county. The incident of which he complains occurred west of Hot Springs, on Highway No. 270, in Garland county. It is alleged that Hellen ". . . purchased a ticket at defendant's station in the ·Citizens Building in

---

[8] Compare cases cited at page 396, 118 Ark. 391, 117 S. W., p. 35. Also, see West Publishing Company's Arkansas Digest, vol. 4, § 283 (3) under "Carriers."

[9] 193 Ark. 6, 97 S. W. 2d 74.

Hot Springs." This is equivalent to a declaration that defendant maintained a place of business in Garland county.

No necessity existed for filing the action in a county other than Garland. There was ample legal facility for service of summons.

It is our view, therefore, that Act No. 70 was intended to afford service rights only in those cases where adequate provision had not been made by previous statutes, and that it has no application to the case at bar.

Writ granted.

McHANEY and BAKER, JJ., concur.