[File No. 7155]

ARDENE HASER, by Ervin Haser, Her Guardian Ad Litem, Appellant, v. ELMER PAPE, and Yellow Cab Company, a Corporation, Defendant and Respondent.

(39 NW2d 578)

Opinion filed October 31, 1949.   Rehearing denied Nov. 23, 1949

Opinion of Court by *Gronna*, District J.
*Sinness & Duffy* and *Chase & Dames* for appellant.
*Rittgers & Hjellum* for defendant and respondent, Yellow Cab Company.

A. J. GRONNA, District J.
This is an action in tort wherein the plaintiff, a girl of fourteen, while riding in a taxicab, was assaulted and raped, with

38

force and against her will, by the driver and also by another man. The suit was brought against the cab company and the driver for money damages. Trial was by jury. Inasmuch as the cab driver did not answer the complaint and was in default, the jury was directed to return a verdict against him and to assess damages in favor of the plaintiff in accordance with instructions as to the law of damages. The jury assessed damages against the cab driver in the sum of ten thousand dollars.

On the other hand, the judge, upon motion of the cab company, directed a verdict for the cab company over the resistance and objection of the plaintiff. This was error, but unless it was prejudicial error, the judgment must be affirmed and a new trial denied. Romkey v. Barnes (1942) 72 ND 127, 133, 5 NW2d 79. The error consists of the violation of a mandatory statutory provision forbidding the direction of a verdict over the objection of the adverse party. 1947 Suppl, 28–1509, being Laws 1945, chap 220. In construing a prototype of such statute, this court has held that prejudice will be presumed from such error and that the party against whom the error is committed need not show that she was, in fact, injured by such error. Ellsworth v. Martindale-Hubbell Law Directory (1939) 69 ND 610 at page 618, 289 NW 101, wherein the opinion continues at page 618:

"The presumption of injury, however, is not conclusive. The effect of the presumption of prejudice is to place the burden on the party in whose favor the error might tend to operate to show that the other party was not, in fact, injured by such error. McPherrin v. Jones, 5 ND 261, 65 NW 685. The ultimate question is still the effect of the error on the rights of the party against whom it is committed."

A motion for a directed verdict is like a demurrer to the evidence. Bailey v. Davis (1923) 49 ND 838, 845, 193 NW 658. Such motion entitles the party against whom it is made to the most favorable views of her case that the evidence warrants as well as to every reasonable inference therefrom. State v. Yellow Cab Company (1932) 62 ND 733, 736, 245 NW 382; La Bree v. Dakota Tractor & Equipment Co. (1939) 69 ND 561, 563, 288 NW 476; Armstrong v. McDonald (1942) 72 ND 28, 4 NW2d 191.

If the verdict had not been directed, the jury could have rightly found the following essential facts:

One Floyd Powell had worked for a short time on the farm of plaintiff's father. He left this employment and went to nearby Jamestown. The plaintiff, Ardene Haser, age fourteen, was living with friends at Woodworth, attending high school. Woodworth is a small town near her father's farm and may be considered a part of the community surrounding the city of Jamestown, a community metropolis. Woodworth is situated about forty-two miles northwest of Jamestown.

Defendant, Elmer Pape, was employed as a cab-driver by the Defendant, Yellow Cab Company, a corporation. The cab company operated in the city of Jamestown and also inter-city in an area which included Woodworth.

Powell employed Pape to drive him to Woodworth. Arrangements were made with the clerk in charge of the cab office to hire the cab for three hours at $2.50 per hour. Powell paid $7.50 in advance for the three hours.

On the way to Woodworth, Powell explained to Pape that he wanted to get Ardene Haser into the cab and told Pape a story to repeat which would induce her to come along. The Hasers had a younger daughter who was afflicted with a chronic heart condition and the story Powell concocted and which Pape repeated to Ardene was that her little sister had suffered a severe heart attack and that her parents had hired the taxi sent to Woodworth to bring her to the farm home.

Both Ardene and the lady with whom she stayed at Woodworth believed this false story. Ardene entered the cab and sat in the front seat. After they had started out of town, Powell, who had been hiding in the back seat, made himself known. For four hours Pape and Powell drove Ardene about the countryside against her will. Both of them raped her. Powell threatened to kill her if she told others. Finally she escaped and walked and ran to her rooming place at Woodworth. Pape and Powell then drove to Jamestown and Powell paid the cab company for the additional time he had the use of the cab. The next day the crime was reported and both men were arrested. They pleaded guilty to rape and were sentenced to the penitentiary.

The trial court directed the verdict of dismissal on the theory that but one conclusion could be reached from the evidence, namely, that the cab-driver was not acting in the scope of his employment when he invited the plaintiff to become a passenger, and accordingly he was without authority to create the contractual relation of carrier and passenger, so that, as a matter of law, the plaintiff was not a passenger and therefore the cab company was not under any duty to her; also that even though plaintiff were a passenger, the cab driver was not acting within the scope of his employment in committing the assault.

However, if we applied the rule that the principal need merely respond in damages for injuries inflicted by his agent while acting within the course and scope of the agent's employment, we would ignore the distinct doctrine applicable to carriers of passengers. Co-op Cab Co., Inc. v. Singleton (1942) 66 Ga App 874, 19 SE2d 541; Korner v. Cosgrove (1923) 108 Ohio St 484, 141 NE 267, 31 ALR 1193.

In the case at bar, defendant, Yellow Cab Company, a corporation, is a common carrier of passengers, being a carrier of passengers for hire and for all persons indifferently. The same rule and measure of responsibility attach to taxicab carriers for the acts of their employees as apply to other common carriers. Accordingly, the principles of law involved in this case are well established. Finlayson v. Bryan (1928) 56 ND 407, 217 NW 662; Durick v. Winters (1941) 70 ND 592, 596, 296 NW 744.

The liability of common carriers to their passengers is not to be determined solely by the principles which control in defining their liability to third persons who are not passengers, because the carrier owes to the passenger an additional duty of carrying her safely to the point of her destination.

"Many cases recognize a distinct doctrine as applicable to carriers of passengers, holding or recognizing that carriers are liable for the wrongful acts of their agents or servants which result in injuries to passengers, whether or not willful and malicious or willful and wanton, and whether or not done in the line of their employment or service, or within the scope of their employment or authority, if done during the course of the dis-

charge of the duty which their employers owe to passengers, or in the course of carrying out the contract of carriage, . . . ." 13 CJS, Carriers, sec 689, page 1275; 10 CJ 888.

"The liability of a common carrier for injuries to passengers occasioned by the wrongful, wilful, or malicious conduct of its servants has been quite frequently based entirely upon the legal obligation imposed upon the carrier to protect its patrons while in its charge from wilful or negligent injury. Accordingly, it is of no consequence when the wrong is committed by the carrier's own servant that the act bears no connection or relation with the duties of such servant to the carrier and is not committed as an incident to the discharge of any duty, but is entirely outside the scope of his employment. The carrier is liable in such cases because the act is violative of the duty it owes through the servant to the passenger, and not because the act is within the scope of the employee's work." 10 Am Jur, Carriers, sec 1123 and see secs 1122, 1238, 1239 and 1448; 35 Am Jur Master and Servant, sec 581.

Concerning the duties of a carrier of persons RC 1943, sec 8–0205 reads: "A carrier of persons for reward must give to passengers all such accommodations as are usual and reasonable, and must treat them with civility and give them a reasonable degree of attention."

Such statute, 8–0205, is merely declaratory of the common law, and being in affirmance of the common law is to be construed as the rule by that law. The common law rule is stated in volume II Wait's Actions and Defenses, 1877 edition, pages 75 and 76, thus: "The carrier's obligation is not only to carry his passenger safely and properly, but also, to treat him *respectfully*. He must not only protect him against the violence and insults of strangers and co-passengers, but *a fortiori*, against the violence and insults of his own servants. And if this duty is not performed, but on the contrary, the passenger is assaulted and insulted, through the negligence or the willful misconduct of the carrier's servant, the carrier is necessarily responsible. Thus, a passenger who is assaulted and grossly insulted in a railway car by a brakeman employed on the train, has a remedy therefor against the company."

In New Jersey Steamboat Co. v. Brockett (1887) 121 US 637, 30 L ed 1049, it was held that a common carrier of passengers undertakes absolutely to protect them against the misconduct of its own servants engaged in executing the contract. "It is the duty of the driver of a public taxicab to treat passengers respectfully, and the owner of a taxicab and the employer of its driver must respond in damages to a passenger for an unwarranted assault by the driver, committed in the course of the transportation." 37 Am Jur, Motor Transportation, sec 155.

In Barbknecht v. Great Northern R. Co. (1927) 55 ND 104, 212 NW 776, it was held that a female passenger traveling by railroad on a ticket contract is entitled to protection against the misconduct and insults of an employee of the railroad; that where a train porter, while on duty, applies opprobrious epithets and insulting language to such passenger, the carrier is responsible in damages for such misconduct. See 13 CJS, Carriers, sec 692 n 56 (1).

Furthermore, a railroad company has been held liable where a rape on a passenger was committed by a brakeman. Garvik v. Burlington (1906) 131 Iowa 415, 108 NW 327, 117 Am St Rep 432, 13 CJS, Carriers, sec 692 n 58 (2).

Likewise, a taxicab carrier has been held liable where the driver of its taxicab committed rape on a female passenger. Korner v. Cosgrove, supra; Co-op Cab Co., Inc. v. Singleton, supra; 13 CJS, Carriers, sec 692, n 58 (3).

Obviously, an unprovoked assault upon a passenger is not within the scope of the cab-driver's employment. It is an act that is violative of the duty the carrier owes through the driver. Therefore, if the plaintiff was a passenger in the defendant's taxicab at the time she was raped by the driver of the cab, she would be entitled to recover from defendant taxicab company for injuries to her person and reputation. Plaintiff was entitled, by virtue of the fact she was a passenger, not only to be protected against the negligent acts of the company's cab driver resulting from the omission to perform the company's duties to its passengers, but, a fortiori, she was likewise entitled to be protected against the unwarranted assault committed on her

person by the cab-driver during the continuance of the carrier-passenger relationship.

We now come to the question of the extent of the common carrier's liability for an assault by one passenger on another. A carrier is not an insurer of the safety of its passengers as against the consequences of acts of third persons not in its employ. 10 Am Jur, Carriers, sec 1243. However, a carrier is under the duty to use due care to protect its passengers from the torts or misconduct of third persons, including fellow passengers. 13 CJS, Carriers, secs 695, 696; 10 Am Jur, Carriers, secs 1439 and 1109. The degree of care required is stated in RC 1943, sec 8-0202:

"A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill."

The rule is stated in Finlayson v. Bryan, supra (1928) 56 ND 407, 217 NW 662, syllabus 2, thus: "A common carrier of passengers for hire is required to exercise the highest degree of care reasonably to be expected from human vigilance and foresight for the safety of its passengers, in view of the mode and character of the conveyance adopted, and consistent with the practical operation of its business."

The foregoing is quoted in Durick v. Winters, supra (1941) 70 ND 592, 596, 296 NW 744.

The basis of the carrier's liability for the tort of a third person is not such tort itself, but rather the negligent omission of the carrier, through its employees, to prevent such tort. 10 Am Jur, Carriers, sec 1454; 13 CJS, Carriers, sec 695 at pages 1295 and 1297; and sec 696 at page 1304. See 15 ALR 868; 42 ALR 168; 45 ALR 303. Inasmuch as the plaintiff in this case was raped by both the cab driver (Pape) and the third person, a passenger (Powell), and because of the undisputed evidence of the willful connivance with and assistance by the driver in the rape by the fellow passenger (Powell), it will be unnecessary to consider further the subject of what degree of care the carrier is under duty to use for the protection of its passengers against injuries

44

from fellow passengers and other third persons. 10 Am Jur, Carriers, sec 1456.

The controlling issue in this case is whether the plaintiff was a passenger. From the evidence, the jury could have found the following facts. The certificate of authority of defendant cab company authorized it to send its taxicab to Woodworth. It owned and operated the taxicab which transported the plaintiff, and it employed the cab-driver who invited her to become a passenger. After the cab-driver had invited plaintiff to become a passenger, she relied upon that invitation in good faith. The plaintiff became a passenger under these circumstances. See Stevens v. Yellow Cab Co. (La App 1932) 142 So 807.

The fact that plaintiff did not pay taxi fare did not prevent the establishment of the carrier-passenger relationship, inasmuch as it is not essential that the fare should be tendered or paid in advance. 13 CJS, Carriers, sec 557. The driver represented to plaintiff that her parents had hired the taxicab to bring her home. If such representation had been true it would be understood that the fare would be paid either by plaintiff or her parents upon arrival at her destination. Then too, the fare would not be computed until the transportation was complete.

We conclude, from an examination of the whole record, that it was prejudicial error to direct a verdict in favor of the defendant cab company.

The judgment is reversed and a new trial granted.

BURKE and MORRIS, JJ., concur.

NUESSLE, C. J., concurs in the result.

GRONNA, District Judge, sitting in place of BURR, J.

CHRISTIANSON, J. (concurring). I concur in the conclusions reached in the opinion prepared by Judge Gronna:—that the trial court erred in directing a verdict for the defendant Yellow Cab Company and that the judgment appealed from must be reversed and the case remanded for a new trial.

The defendant, Yellow Cab Company, was licensed to operate

as a carrier of persons in the City of Jamestown and was authorized pursuant to certificate issued by the Public Service Commission of North Dakota (NDRC 1943, Sec 49–1801), to operate as a common carrier of persons in certain territory including the whole of the County of Stutsman in which the City of Jamestown and the town of Woodworth are both located. In regulating the public establishment of common carriers "the great object of the law was to secure the utmost care and diligence in the performance of their important duties—an object essential to the welfare of every civilized community." N.Y.C. R.R. Co. v. Lockwood, 17 Wall 357, 377, 21 L ed 627, 639. The authority conferred upon such carriers is granted to effect public purposes. The obligations of such carriers arise from the public nature of the employment, and are "founded on the policy of the law for the protection of the persons and property of the public, which must of necessity be committed, to a very great extent, to the care of public carriers." Cleveland P. & A. R. Co. v. Curran, 19 Ohio St 1, 12, 2 Am Rep 362, 366. While a contract is essential to the formal relationship of carrier and passenger the obligations of such common carrier to persons whom it undertakes to carry or who are lawfully on a conveyance operated by the carrier and accepted for carriage by the employee in charge of such conveyance exists independent of contract or contractual relationship between the parties. 10 Am Juris, Sec 1239, pp 159–160; 3 Shearman & Redfield on Negligence, Revised Edition, Sec 494, p 1232; McNeill v. Durham & C. R. Co., 135 NC 682, 47 SE 765, 67 LRA 227; Philadelphia & R. R. Co. v. Derby, 14 How 468, 485, 14 L ed 502, 509. See, also, 4 Williston on Contracts, Revised Edition, Sec 1113.

A person may have the status of a passenger although no contractual relationship exists between him and the carrier. 13 CJS Sec 549, p 1053, Sec 562, p 1070. Thus a person who is carried gratuitously (13 CJS Sec 549, p 1053; 2 Michie, Carriers, Sec 1271, p 1566; 10 Am Juris, Sec 967, p 34; Jacobus v. Railway, 20 Minn 125, 18 Am Rep 360) or a person, who travels on a free pass issued in violation of law and which the carrier was prohibited from issuing or the passenger prohibited from using or both, is not deprived of the rights of a passenger or of the

protection to which he is entitled as such. 10 Am Juris Sec 969, p 35; 13 CJS Sec 550, p 1054; Bradburn v. Whatcomb County R. & L. Co., 45 Wash 582, 88 Pac 1020, 14 LRA NS 526; Gabbert v. Haxkett, 135 Wis 86, 115 NW 345, 14 LRA NS 345; John v. N. P. R. Co., 42 Mont 18, 111 Pac 632, 32 LRA NS 85; Mc-Neill v. Durham & C. R. Co., supra. This is so even where a person has accepted and is being carried on a free pass issued by a common carrier in violation of an act of Congress which made it a misdemeanor for the carrier to give, and for the traveler to use, any such free pass in interstate transportation. Southern Pacific Company v. Schuyler, 227 US 601, 57 L ed 662. And so a person traveling unlawfully on a conveyance of a common carrier on Sunday under a contract illegal and void because made, and to be performed, in violation of a Sunday law has the status of a passenger and the carrier owes to him the same duty that it owes to passengers carried under a lawful contract. 2 Michie, Carriers, Sec 2191, p 1589; Carroll v. State & Island R. Co., 58 NY 126, 17 Am Rep 221; Opsahl v. Judd, 30 Minn 126, 14 NW 575.

"A person who is accepted or invited to ride as a passenger without the payment of fare and who does so in good faith has the status of a passenger. This rule applies to a child so accepted or invited, or who is in charge of another who does pay fare." 13 CJS Sec 549, p 1053.

"It is enough, to fix the liability of a carrier for injuries occasioned by the negligence of its servants, that the passenger be lawfully on the train, whether by reason of having paid his passage money or by permission or invitation of officers or agents of the company, and such a passenger is entitled to the same degree of care as if he had paid his fare." 2 Michie, Carriers, Sec 2169, p 1565.

Ordinarily a common carrier can act only through its agents and employees, and the obligations which a carrier owes to passengers, including the obligation to protect a passenger from injury by the carrier's employees, must usually be discharged by means of employees engaged in carrying out its activities in transportation of persons. 13 CJS Sec 689, p 1273. It has been said that as to the care, protection and control of passen-

gers on a passenger train, the conductor within the real or apparent scope of authority is the alter ego of the carrier and the company is responsible for his acts, Davis v. Jones, 34 Ga App 7, 129 SE 892; and that a bus driver in sole charge of a bus in the care and protection and control of the passengers is clothed with all the bus company's authority with respect to the duties which the carrier owes to such passengers. Interurban Transportation Co. v. Reeves, 194 Ark 321, 108 SW2d 594; South Plains Coaches v. Box, Tex Civ App, 111 SW2d 1151. These holdings seem peculiarly applicable to taxicab carriers, taxicab drivers and taxicab passengers. Ordinarily a taxicab driver has complete charge and control of the cab. Anderson v. Yellow Cab Co., 179 Wis 300, 191 NW 748, 31 ALR 1197; Chaput v. Lussier, 132 Me 48, 165 A 573; Ramsden v. Boston & Albany R. Co., 104 Mass 117, 121; Wilton v. Middlesex R. Co., 107 Mass 108, 110. Often he is the only representative or employee of the company with whom a person who seeks transportation or who becomes a passenger in a taxicab comes in contact. The taxicab driver frequently, if not generally, solicits business for his employer, and invites persons to become passengers. He accepts passengers who are transported, collects their fares, and is in charge of the operation of the cab during the entire course of the transportation. He frequently calls for the passengers at some specific place and transports him to a place designated by the passenger. He is vested with authority to enter into the relationship of carrier and passenger and generally must act for the company in discharging the duties and obligations which the law imposes upon the company when it accepts a person for carriage. Obviously he is not authorized by the company to commit any wrongful act against a passenger or against one who is accepted for passage. Wrongful or malicious acts on the part of the cab driver are outside the scope of his authority; but this does not relieve the company of liability for wrongful or malicious acts on his part which are injurious to one who has entrusted himself for carriage to the common carrier whose representative he is, and which are violative of the obligations which the carrier owes to such person.

"In all instances where it appears that the employment of the

principal afforded the agent or employee the means or opportunity, which he used while so employed, to commit an injury on a third person, the principal must be held liable. Expressed differently, the wilful trespass or injury of the agent, derived from the authority confided to him by the principal as a source of power in the exercise of his master's employment, will make the principal responsible. The applicability of this rule is unaffected by the fact that the act was done in excess of authority or in disobedience of the carrier's orders or that the conventional relationship of carrier and passenger did not exist at the time the injuries were sustained." 10 Am Juris Sec 1122, pp 106–107.

The rule supported by the great weight of authority is that the liability of a common carrier for injuries to passengers occasioned by the wrongful, wilful or malicious conduct of its servants rests upon the legal obligation imposed upon the carrier to protect its passengers while in its charge from wilful or negligent injury. 10 Am Juris, Carriers, Sec 1123, p 108, Sec 1448, p 264; 3 Shearman & Redfield on Negligence, Revised Edition, Sec 519, p 1327 et seq. See, also, 13 CJS p 1275. "Accordingly it is of no consequence when the wrong is committed by the carrier's own servant that the act bears no connection or relation with the duties of such servant to the carrier and is not committed as an incident to the discharge of any duty, but is entirely outside the scope of his employment. The carrier is liable in such cases because the act is violative of the duty it owes through the servant to the passenger, and not because the act is within the scope of the employee's work. It is further immaterial that the act may be one of private retribution on the part of the servant, impelled by personal malice toward the passenger and without any attribute of service to the carrier. It has been viewed as wholly inapt to apply the doctrine of scope of employment, as ordinarily understood, to such an act. Its only relation to the scope of the servant's employment rests upon the disregard and violation of a duty imposed by the employment." 10 Am Juris, Carriers, Sec 1123, p 108.

The events which gave rise to this action occurred October 27, 1947. The plaintiff, Ardene Haser, was at that time fourteen years of age and attended high school in the town of Woodworth.

Her home was with her parents on a farm some eleven miles from Woodworth but she was boarding and rooming with a Mrs. Stoering at Woodworth while attending school. She had spent the week-end at home with her parents and a younger brother and sister. She returned to Woodworth on the morning of Monday, October 27th. Her younger sister, then some two years of age, has a chronic heart condition, and on the morning when Ardene left for Woodworth the sister was also ill with a sore throat and had been "fussing" more or less during the night. In the evening of October 27th shortly after six o'clock the defendant Pape drove the taxicab which he was operating to the house where Ardene Haser was rooming. Ardene was eating her supper and Mrs. Stoering, the woman with whom Ardene was rooming and boarding, went to the door. The defendant Pape informed Mrs. Stoering that he desired to talk with the plaintiff Ardene Haser. Mrs. Stoering informed Ardene of this fact, and thereupon Ardene went to the door and the defendant Pape then told her that her little sister was very sick and had to be taken to Minneapolis and that her folks "had phoned the taxicab company, Yellow Cab, and told them to send a cab out to get her and take her home."

It is not unusual for one person to order a taxi to call for some other person at a designated place and transport such person to a designated place, or to some place to be designated by the person to be transported. Parents frequently order a taxi to call for a child and bring the child home. A taxi driver who responds to such call and who calls for the child and transports him to the designated place is not acting outside of the general scope of his employment and the taxicab company owes to such child all the duties and obligations which it owes to a passenger. This would be true even though the driver in calling for and inviting the child to ride and transporting him was acting contrary to his instructions from the company. Wilton v. Middlesex R. Co., supra; 2 Michie, Carriers, Sec 2173, pp 1570–1571.

Ardene believed the statement of the taxi driver that her parents had sent the cab to take her home. She did not even finish eating her supper but left at once and entered the taxicab as she

supposed for transportation to her home. After she entered the cab the events took place which are set forth in the opinion prepared by Judge Gronna and need not be repeated here.

As has been said the defendant Yellow Cab Company was a common carrier of persons in certain territory which included the City of Jamestown, the town of Woodworth and the territory lying between Jamestown and Woodworth. The defendant Pape was, and for some time had been, one of the regularly employed drivers of defendant's taxicabs. In the afternoon of October 27, 1947, the defendant Pape was assigned to drive one of the cabs of the defendant Yellow Cab Company. He was in complete charge of the cab, and it was within the general scope of his employment to call for and accept and transport passengers. Driving this cab he went to the house at Woodworth where the plaintiff was rooming and informed her that her parents had telephoned the defendant cab company to send a cab out to get her and take her home. He thus in a most persuasive manner invited her to become a passenger in the cab he was driving and to be transported to her home. The fact that the driver violated instructions or regulations of the company in the operation of the cab and that he was animated by ulterior motives of self interest did not affect the liability of the company for the wrongful or malicious acts on his part toward one who in good faith and at his invitation as the driver of the cab had placed herself in his charge as a passenger of the defendant, Yellow Cab Company. Wilton v. Middlesex R. Co., supra; Chaput v. Lussier, supra; Ramsden v. Boston & Albany R. Co., supra; Chattanooga Rapid Transit Co. v. Venable, 105 Tenn 461, 58 SW 861, 51 LRA 886.; Louisville & N. R. Co. v. Weaver, 108 Ky 392, 22 Ky L Rep 30, 56 SW 674, 50 LRA 381; 10 Am Juris, Sec 1122, pp 106–107; Sec 1123, p 108.