CRASE *v.* CITY OF DETROIT.

1. CARRIERS—INJURIES TO PASSENGERS BY CROWDING.

> The general rule that a carrier is not liable for injury to
> a passenger caused by crowding and jostling of others is
> not applicable where the conduct of the other passengers is
> unusual or disorderly and could be prevented by the employees
> in charge or where the carrier has reason to expect a large
> number of passengers and fails to use due care to provide
> sufficient guards or otherwise to protect passengers from
> injury by crowding.

2. SAME—CROWDED LOADING PLATFORM—NEGLIGENCE—QUESTION FOR
JURY.

> Whether or not municipal operator of bus system was guilty
> of negligence in care used for handling crowds at a loading
> station that was usually crowded on Saturday noons, when acci-
> dent involved occurred, was properly submitted to jury.

3. SAME—CARE TOWARD INVITEES.

> Ordinary care is commensurate with, and in proportion to, the
> extent that the carrier should have reasonably anticipated
> or known of hazards and dangers towards invitees entering
> upon its premises.

4. SAME—PRIMA FACIE CASE OF NEGLIGENCE—RES IPSA LOQUITUR—
INFERENCES.

> A plaintiff passenger in an action against a carrier may not
> establish a prima facie case by evidence of the happening of

REFERENCES FOR POINTS IN HEADNOTES

[1] 10 Am Jur, Carriers §§ 1262, 1348.
Carrier's liability for injury to passenger due to rushing or crowd-
ing of passenger. 32 ALR 1315; 155 ALR 634.
Liability of carrier to passenger for injury due to crowded con-
dition of motorbus, or pushing or crowding passengers therein
26 ALR2d 1219.
[2] 10 Am Jur, Carriers § 1362.
[3] 10 Am Jur, Carriers §§ 1245, 1253.
[4] 10 Am Jur, Carriers § 1622.
[5] 10 Am Jur, Carriers § 1661.
[6] 10 Am Jur, Carriers § 1666.
[7] 10 Am Jur, Carriers §§ 1672, 1673.

the accident alone but if the attendant circumstances are sufficient to take the case out of the realm of conjecture and within legitimate inferences from established facts, a prima facie case is made out.

5. SAME—PASSENGERS—CONTRIBUTORY NEGLIGENCE—QUESTION OF FACT.

Question of contributory negligence of plaintiff, a prospective passenger for one of defendant's buses, was properly submitted to jury, where it appears he was so jostled by a large crowd as to cause him to be injured by bus as it came to a stop, that the loading platform was under the complete and exclusive control of the defendant, that those who entered were patrons of the carrier and there by its invitation and for its profit and there is no proof that plaintiff was attempting to board the moving bus.

6. SAME—PASSENGERS—INSTRUCTIONS TO JURY.

Charge of court in passenger's action against carrier *held*, not prejudicial when examined in its entirety, including 3 paragraphs thereof intervening between 2 complained of by defendant.

7. DAMAGES—CARPENTER—LEG INJURY—TOTAL DISABILITY.

Verdict of $56,350, as reduced by remittitur to $41,000, *held*, not excessive in action by carpenter who was nearly 67 years of age at time of injury which resulted in loss of one leg and permanent disability of the other leg, permanent and total disability, had had salary of from $3,200 to $3,300 per year, an expectancy of 9.48 years, has medical expenses of $3,840 and more will be required, and has had and will have considerable pain and suffering.

Appeal from Wayne; O'Hara (Chester P.), J. Submitted October 5, 1954. (Docket No. 10, Calendar No. 46,222.) Decided November 29, 1954.

Case by Charles Crase against City of Detroit, a municipal corporation, Department of Street Railways, for damages from injuries sustained at loading station. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Cronin & Cronin,* for plaintiff.

*James S. Shields, A. Albert Bonczak* and *David Grainer,* for defendant.

BUSHNELL, J.  This action arose out of an accident which occurred at the Capitol Park loading station of defendant department of street railways of the city of Detroit, about noon on Saturday, December 29, 1951.

The "station" is located on the westerly side of Griswold street and extends in a northerly and southerly direction between State street and Grand River avenue.  It is approximately 300 feet in length and 7 feet in width, and is inclosed.  Admission is gained through entrances located at the north and south.  The west side of the station is separated from the right-of-way by a wire fence, in which are certain openings through which passengers board the DSR buses.

Plaintiff Charles Crase, a carpenter employed in a downtown office building, arrived at the loading station about 12:05 p.m., paid his fare, and entered through the south gate for the purpose of boarding a Seven Mile road bus.  Upon his arrival there were only 3 or 4 other passengers in the station, but when his bus arrived some 40 minutes later the area in the Seven Mile road loading entrance was completely filled with passengers.  Crase was standing against a post about 1-1/2 feet from the loading opening when the bus pulled into the station, and immediately the crowd surged forward, pushing him through the entrance and into the space between the bus and the wire fence.  He tried to maintain his equilibrium and follow along with the moving vehicle, but lost his footing on the icy right-of-way and fell under the wheels.  As a result, he suffered serious injuries.

The only eyewitness testimony produced at the trial was that of plaintiff and the bus driver, Bernard Wall, who was called by the plaintiff as an adverse

witness. The remainder of the testimony was that of plaintiff's wife and several attending physicians regarding the conditions which resulted from the injury and operations.

No testimony was offered by the defendant, it having relied upon its motion for a directed verdict. This motion, which was taken under advisement,* was denied and the matter submitted to the jury, which returned a verdict of $56,350 in favor of plaintiff. On a motion for new trial, a remittitur of $15,350 was ordered, which was accepted, and a new trial was denied.

The 4 questions raised on appeal are accepted by the plaintiff. In support of the first contention that defendant was not guilty of actionable negligence and, hence, entitled to a directed verdict, the general rule stated in 13 CJS, Carriers, § 695, p 1299, was cited with supporting authorities. This general rule that a carrier is not liable for injury to a passenger caused by crowding and jostling of others is qualified by the phrase:

"unless the conduct of such other passenger is unusual and disorderly and could be prevented by the employees in charge, or unless the carrier has reason to expect a large number of passengers, and fails to use due care to provide sufficient guards or otherwise to protect passengers from injury by crowding."

According to the testimony the loading station is usually crowded at this hour on every Saturday, and the bus driver (Wall) testified that Saturday noon is always a rush hour. Under these facts, in view of the holding in *Cousineau* v. *Muskegon Traction & Lighting Co.*, 145 Mich 314 (20 Am Neg Rep 576),

---

* See CL 1948, § 691.691 *et seq.* (Stat Ann and Stat Ann 1953 Cum Supp § 27.1461 *et seq.*).—REPORTER.

the trial court properly submitted the question of defendant's negligence to the jury.

In discussing the ordinary and reasonable care that a carrier must exercise towards passengers using its stations and approaches, the Court said in *Thurkow* v. *City of Detroit*, 292 Mich 617, at page 621:

"Ordinary care is commensurate with, and in proportion to, the extent that the carrier should have reasonably anticipated or known of hazards and dangers towards invitees entering upon its premises. *Anda* v. *Chicago, D. & G. B. Transit Co.*, 231 Mich 567; *Kelly* v. *Manhattan R. Co.*, 112 NY 443 (20 NE 383, 3 LRA 74). We cannot say plaintiff failed to establish a prima facie case. The happening of the accident alone is no evidence of negligence. *Elsey* v. *J. L. Hudson Co.*, 189 Mich 135 (LRA1916B, 1284); *A. J. Brown & Son, Inc.*, v. *City of Grand Rapids*, 265 Mich 465. But if the attendant circumstances are sufficient to take the case out of the realm of conjecture and within legitimate inferences from established facts, a prima facie case is established. *Burghardt* v. *Detroit United Railway*, 206 Mich 545 (5 ALR 1333); *O'Donnell* v. *Lange*, 162 Mich 654 (Ann Cas 1912A, 847); *Macres* v. *Coca-Cola Bottling Co., Inc.*, 290 Mich 567."

See, also, *Sheldon* v. *Flint & Pere Marquette R. Co.*, 59 Mich 172; *Good* v. *Michigan Farm & Industrial Fair, Inc.*, 270 Mich 543; and annotations in 32 ALR 1315; 155 ALR 634.

Defendant contends that plaintiff was guilty of contributory negligence as a matter of law. This same argument was made in the *Cousineau Case* and defendant there argued much along the lines that are followed by defendant here. We shall not repeat the reasoning of the *Cousineau Case*, except to point out that the place where passengers were loaded, like the place here, was under the complete and exclusive

control of the defendant. Those who entered were patrons of the company and were there by its invitation and for its profit; and (pp 317, 318) "it was a fair implication it would afford them reasonably safe guards from danger while on its ground. * * * There is no testimony indicating that plaintiff attempted to board a moving car. * * * At most, it would present a question for the jury."

It cannot be said, therefore, in the light of the *Cousineau Case* that what Crase did here constituted contributory negligence as a matter of law. "At most, it would present a question for the jury."

It is urged that the trial court erred in charging the jury. Defendant emphasizes 2 paragraphs of the charge, but overlooks 3 intervening paragraphs which clearly define the duty imposed upon the defendant. The charge has been examined in its entirety and we find nothing prejudicial.

Defendant asks us to set aside the verdict as excessive. A similar argument was addressed to the trial court, and a remittitur was ordered and accepted. The analysis made by the trial judge in this particular is clear and cogent, and fully expresses our view of the situation. We therefore adopt its reasoning for the purpose of decision here.

"We are dealing with a man who was within a few weeks of his 67th birthday at the time of the accident, he having been born on January 22, 1885, and the accident occurred on December 29, 1951. At the time of the trial, in October, he was approximately 68.75 years of age. He had been a carpenter during his lifetime, and was employed at one of the big office buildings in downtown Detroit at the time he was injured, at a salary ranging from $3,200 to $3,300 per year. From pictures introduced in evidence, he had enjoyed a good physique and he claims that he was in good health and was regularly employed. The mortality tables were introduced show-

ing that he had an expectancy of approximately 9.48 years. These mortality tables were submitted to the jury.

"Plaintiff's counsel claimed in his argument, that plaintiff was entitled to approximately $6,000 for lost earnings up to the time of the trial, and $33,400 for lost future earnings, basing this latter figure upon a 12-year period. This was immediately corrected by the court, upon objection of defendant's counsel. * * * Of course, there is no way that this court can determine, under this general verdict, what was allowed by the jury for future earnings, and there is not any question but that the man is permanently and totally incapacitated. One leg has been amputated, and the other leg was very badly damaged in the ankle and the foot, and is of little use to him. He had medical expenses of approximately $3,840.30. His earnings for the entire time covered by his expectancy would be slightly over $24,000, when figured at present worth, and his earnings for the future for 5 years would be approximately $14,000 at present worth. This would mean that he would be able to earn the full amount of his wages up to the time that he was in his 73d year. * * *

"Having in mind the present worth of the future damages and giving to plaintiff the benefit of the doubt that he would be able to make his present earnings up to the time that he is 73, and would still have some earning capacity during the balance of his expectancy, the court is of the opinion that the sum-total for future earnings, plus the lost earnings up to the time of trial for one year and three-quarters, the medical expenses and pain and suffering, past and future, should be fairly compensated at $41,000, which is far in excess of any jury verdict rendered in this court and in this type of lawsuit during the recollection of this court. *Grinnell* v. *Carbide & Carbon Chemicals Corp.*, 282 Mich 509, 537."

It is not disputed that Crase suffered substantial injuries and that he is totally and permanently dis-

abled. His right leg has been amputated and his left is permanently disabled. He has undergone 5 operations, which have virtually denuded the original skin area on his chest, abdomen and left thigh, with but scar tissue areas remaining. Further medical and surgical treatment will be required. In the light of the seriousness of the injuries and the past and probable future pain and suffering plaintiff will have to undergo, it cannot be said that the judgment finally entered was excessive or shocking to the conscience of the court. It appears to be no more than compensatory under the circumstances.

The judgment is affirmed, with costs to plaintiff.

BUTZEL, C. J., and CARR, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.