Merrimack
No. 7145

### Clara Jean Davis v. Northeast Airlines, Inc.

July 30, 1976

*Upton, Sanders & Smith (Mr. Richard F. Upton* orally) for the plaintiff.

*Sulloway, Hollis, Godfrey & Soden* and *John C. Ransmeier (Mr. Ransmeier* orally) for the defendant.

Kenison, C.J.   The plaintiff breeds and sells dachshunds. On June 13, 1969, she flew from Manchester to Chicago aboard a flight of the defendant, Northeast Airlines, Inc., taking three dachshunds with her as excess baggage. In this action she seeks damages for the death of one dog and the injury of another. The defendant moved for dismissal of the action relying on provisions contained in the tariff which the defendant had filed with the Civil Aeronautics Board. The Trial Court *(Keller,* C.J.) reserved and transferred without ruling the questions of law raised by the motion.

Under the Federal Aviation Act of 1958, the defendant filed a tariff containing its rules, regulations, and rates for the carriage of passengers and their baggage. 49 U.S.C.A. § 1373 (1976). The applicable provision of the tariff provided, "The owner assumes all risk for injury, sickness or death of any pet(s) accepted for transportation." The tariff further provided, "[I]f the passenger, at the time of presenting a dog or cat for transportation, when checking in for a flight, declares a value and pays a valuation charge of 20 cents for each $100, or fraction thereof, of declared value, NE's liability only for death or for injury rendering death necessary shall not exceed such declared value." The tariff limited

declarations of value to $500. The plaintiff did not declare a value or pay a valuation charge.

The plaintiff contends that the Act does not permit the Board to accept tariff provisions which disclaim, as opposed to limit, the defendant's liability for breach of its duty as a common carrier. The common law held void as against public policy contractual provisions which exempted a common carrier from such liability. *United States v. Atlantic Mut. Ins. Co.*, 343 U.S. 236 (1952). The common law allowed the carrier to limit its liability, provided that it offered the shipper the opportunity to declare a higher value and pay a higher rate. The common law considered a provision like the tariff in the present case to be a disclaimer of liability. *Boston & Maine Railroad v. Piper*, 246 U.S. 439 (1918). The plaintiff contends that the Act tacitly incorporates the common law rules, and that the Board had no authority under the Act to allow the exculpatory provision in the defendant's tariff.

This contention was rejected in *Lichten v. Eastern Airlines, Inc.*, over the strong dissent of Judge Frank. 189 F.2d 939 (2d Cir. 1951). This decision was strongly criticized in legal commentary. 65 Harv. L. Rev. 341 (1951); 21 Fordham L. Rev. 64 (1952); 25 So. Cal. L. Rev. 190 (1952). Its authority was questioned in later decisions. *Randolph v. Am. Airlines, Inc.*, 103 Oh. App. 172, 144 N.E.2d 878 (1956); *Rosenschein v. Trans World Airlines, Inc.*, 349 S.W.2d 483 (Mo. App. 1961). The only other case on point holds that the Federal Aviation Act does not authorize the filing of tariffs which exonerate carriers from liability. *Odom v. Pacific Northern Airlines, Inc.*, 393 P.2d 112 (Alaska 1964). This decision in turn has been questioned. *Blair v. Delta Air Lines, Inc.*, 344 F. Supp. 360 (S.D. Fla. 1972).

Because the cases on this question are in conflict, the parties have referred to decisions involving the Board's authority to accept other exculpatory clauses. The defendant relies on cases applying tariff provisions which disclaimed liability for loss or damage to jewelry and for consequential or special damages. *See, e.g., Tishman & Lipp, Inc. v. Delta Air Lines*, 413 F.2d 1401 (2d Cir. 1969) (jewelry); *Killian v. Frontier Airlines*, 150 F. Supp. 17 (D. Wyo. 1957); *Blair v. Delta Air Lines, Inc.*, 344 F. Supp. 360 (S.D. Fla. 1972), *aff'd on the opinion below*, 477 F.2d 564 (5th Cir. 1973) (special or consequential damages). The Board has declared both classes of exculpatory clauses to be unlawful. *Baggage Liability Rules Case*, Order E-24198, 45 CAB 182 (1966); *Liability and Claim Rules and Practices Investigation*, Order 76-3-139 (March 22, 1976).

*See also Gellert v. United Airlines,* 474 F.2d 77 (10th Cir. 1973). The plaintiff relies on the decisions which hold that the Act does not authorize limitations or conditions on liability for personal injury or death. Pratt, *Tariff Limitations on Air Carriage Contracts,* 29 J. Air. L. & Com. 14, 36 *et seq.* (1963). The Board in time prohibited such tariff provisions. Order No. E-8756, 19 Fed. Reg. 7387 (1954). The Board has ruled on the provision involved in this case.

The Civil Aeronautics Board has determined that tariff provisions "which purport to exculpate carriers from liability for their own negligence in the carriage of live animals as baggage" are unlawful. CAB Order No. 74-12-124, 40 Fed. Reg. 1121, 1122 (1975). *See also* Order No. 74-4-20, 39 Fed. Reg. 12915 (1974). The order states, "The Board's decision that a carrier rule exculpating itself from liability for its own negligence is unlawful on its face is consistent with long established legal principles . . . . The Supreme Court of the United States has consistently held it to be against public policy for a common carrier, by special or express contract, to exempt itself from liability for loss or damage due to its own negligence." 40 Fed. Reg. 1121, 1122 & n. 5 (1975). The defendant's tariff is invalid under this decision.

The defendant argues that the Board's decision just quoted cannot be applied to invalidate the tariff in this case, because the Board rendered the decision five years after the occurrence giving rise to plaintiff's claim. The defendant relies on *T.I.M.E. Inc. v. United States,* 359 U.S. 464 (1959), which was a suit brought after shipment challenging the reasonableness of charges which were made in accordance with a duly filed tariff. The shipper conceded that the court had no jurisdiction to determine the reasonableness of the rates, and that the issue of their reasonableness was for the Interstate Commerce Commission. The Supreme Court held that the suit failed, because the Motor Carrier Act did not authorize the I.C.C. to award reparations as to admittedly governing past rates. The defendant argues that *T.I.M.E. Inc.,* governs this case, because the Federal Aviation Act does not authorize the Board to award reparations. *See Vogelsang v. Delta Air Lines, Inc.,* 302 F.2d 709 (2d Cir. 1962).

The controlling authority, however, is *Southwestern Sugar & Molasses Co., Inc. v. River Terminals Corp.,* 360 U.S. 411 (1959), which was written by the author of *T.I.M.E. Inc.* In *River Terminals* the charterer of a barge filed a libel against the owner of a tug for damages arising from the loss of the barge. The tug relied on the

exculpatory provisions contained in a duly filed tariff. The Supreme Court held that prior to determining the validity of the exculpatory clauses, the trial court must require the parties to "seek the views of the I.C.C. . . . as to the circumstances bearing on the validity of respondent's exculpatory clause in the context of this litigation . . . ." 360 U.S. at 421-22. The Court noted that the clause may have been considered in setting rates. Yet the Court stated, "We may assume that the question whether a clause of this kind offends against public policy is one appropriate ultimately for judicial rather than administrative resolution." 360 U.S. at 420. The I.C.C. had authority to award reparations under the statute involved in *River Terminals,* but nothing in the opinion indicates that this circumstance affected the court's jurisdiction to determine the validity of the exculpatory clause. *River Terminals* manifestly involved a retrospective decision regarding the validity of an exculpatory tariff provision.

The Civil Aeronautics Board has held that it may consider liability clauses of tariffs without reviewing rates. *Liability and Claim Rules and Practices Investigation,* Order No. 76-3-139 (March 22, 1976). Several decisions have referred issues to the Board where the plaintiff's claim involved matters affecting rates. *Compare Danna v. Air France,* 463 F.2d 407 (2d Cir. 1972) *and Price v. Trans World Airlines, Inc.,* 481 F.2d 844 (9th Cir. 1973) *with Eisman v. Pan American World Airlines,* 336 F. Supp. 543, 551-52 (E.D. Pa. 1971). These decisions establish that the present case is not controlled by the Board's lack of authority to award reparations.

The Board has already ruled on the issues which might be referred to it in the present case. *See Nader v. Allegheny Airlines, Inc.,* 512 F.2d 527, 544-46 (D.C. Cir. 1975), *rev'd,* 96 S. Ct. 1978 (1976). Pursuant to the Board's determination, the exculpatory provisions of the tariff in the present case are unlawful and invalid. Annot., 25 A.L.R.2d 1352 (1952). The answer to the transferred question is: the motion to dismiss should be denied.

*Remanded.*

All concurred.