Mark D. RAVREBY, Appellant,

v.

UNITED AIRLINES, INC., Appellee.

No. 63455.

Supreme Court of Iowa.

June 18, 1980.

Paul H. Rosenberg of Rosenberg & Margulies, Des Moines, for appellant.

Brent B. Green of Gamble, Riepe, Burt, Webster & Davis, Des Moines, and Paul M. Tschirhart, Chicago, Ill., for appellee.

Considered by REES, P. J., and UHLENHOPP, McCORMICK, McGIVERIN, and LARSON, JJ.

UHLENHOPP, Justice.

This appeal involves the responsibility of an airline, as a common carrier, to protect its non-smoking passengers from the effects of tobacco smoke from smoking passengers.

In July 1977, plaintiff Mark D. Ravreby, a Des Moines physician and member of the Iowa bar, purchased from defendant United Airlines, Inc., a first-class round trip ticket to Reno, Nevada, for $410. At the time Dr. Ravreby checked in for his flight on July 28, 1977, United personnel asked him whether he preferred a seat in a smoking or no-smoking section. He requested a no-smoking seat. Upon boarding the plane he was seated in the front row of the first-class section. That section had two other rows. Smoking was not allowed in the front row where Dr. Ravreby was seated, but was allowed in the other two first-class rows including the seat directly behind him.

Dr. Ravreby testified that during the flight the first-class cabin "was completely filled with smoke" which caused him "extreme nausea, hoarseness, and irritation to the eyes and throat." His discomfort was exacerbated by hay fever and a heart condition which make him extra sensitive to air pollutants. He expressed his discomfort to the flight stewardess but she told him she could do nothing. Dr. Ravreby also asked the other passengers in the cabin to refrain from smoking, but they declined to comply. Finally, Dr. Ravreby complained at a United "comfort station" during a stopover in Denver, but "was assigned to the same area, and again the same situation occurred." He completed the rest of his round trip flight under the same circumstances.

Upon his return to Des Moines, Dr. Ravreby wrote United asking for a refund of his ticket price. When that attempt proved unsuccessful, he filed an action against United in the Polk District Court Small Claims Division, seeking damages for

the discomfort he sustained during his flight. He did not ask damages for any long-term effects that the smoke had on his health.

As a basis for recovery Dr. Ravreby originally alleged nuisance, breach of the common carrier's duty of care, and breach of contract. Later he abandoned the nuisance theory.

The Magistrate awarded Dr. Ravreby the price of his ticket. United appealed to a District Judge, who dismissed the action on three grounds: (1) Iowa courts lack jurisdiction over the controversy due to regulation of this area by the Civil Aeronautics Board (CAB); (2) United fulfilled its contractual duties to Dr. Ravreby and has no duty, "contractual or otherwise, to protect plaintiff from any contact with smoke while he is in defendant's airline"; and (3) Dr. Ravreby "has proven no personal injury." The district judge conducts a de novo review in these cases on the record before the magistrate, although the judge may hear additional evidence if the record is inadequate. § 631.13(4), The Code 1979.

Dr. Ravreby petitioned for discretionary review under section 631.16 of the Iowa Code, and we granted the petition. In this review Dr. Ravreby challenges each of the three grounds for dismissing the action.

■ Iowa Rule of Appellate Procedure 203 states, "If an application for discretionary review is granted, further proceedings shall be had pursuant to the Rules of Appellate Procedure to the full extent not inconsistent with statute." The claim was in the nature of an action at law for damages, hence the decision is reviewable by this court on error under Rule of Appellate Procedure 4. *See also, Keith v. Community School District of Wilton in the Counties of Cedar and Muscatine*, 262 N.W.2d 249, 255 (Iowa 1978). Chapter 631 is consistent with that conclusion. *See* § 631.16(6) ("The record and case shall be presented to the supreme court as provided by the rules of appellate procedure . . .."). Consequently, the findings of fact in the District Judge's decision have the force of a jury verdict and are binding if supported by

substantial evidence. *Knauss v. Kemin Industries, Inc.*, 267 N.W.2d 56, 57 (Iowa 1978). Evidence is substantial when a reasonable mind would accept it as adequate to support a conclusion. *State v. Robinson*, 288 N.W.2d 337, 338 (Iowa 1980); *General Telephone Co. of Midwest v. Iowa State Commerce Commission*, 275 N.W.2d 364, 370 (Iowa 1979).

■ I. *Subject-matter jurisdiction.* The parties present the jurisdictional issue as two separate questions: first, whether Congress preempted state action in this area by the Federal Aviation Act of 1958, and second, whether CAB's experience in the regulation of smoking on board commercial aircraft gives it primary jurisdiction over a complaint such as the one of Dr. Ravreby. We note initially that even if we were to answer the second question affirmatively, Iowa courts would still have *jurisdiction* over this case because the doctrine of primary jurisdiction is predicated on judicial restraint rather than on the absence of subject-matter jurisdiction. *See Ashland Oil & Refining Co. v. Federal Power Commission*, 421 F.2d 17, 20 (6th Cir. 1970); *Maryland-National Capital Park and Planning Commission v. Washington National Arena*, 282 Md. 588, 601, 386 A.2d 1216, 1226 (1978); *Browne v. Milwaukee Board of School Directors*, 69 Wis.2d 169, 175, 230 N.W.2d 704, 707 (1975); 3 K. Davis, Administrative Law Treatise § 19.01, at 3 (1958). Since the record is not entirely clear whether the District Judge relied on the doctrine of primary jurisdiction, we will address both questions.

A. *Preemption.* United bases its preemption claim on the regulatory authority Congress granted CAB. Under the Federal Aviation Act of 1958, federal economic regulatory responsibility for interstate carriers is vested in CAB. 49 U.S.C. § 1324 (1976); Freeman, *State Regulation of Airlines and the Airline Deregulation Act of 1978*, 44 J. Air L. & Com. 747, 750 (1979). Pursuant to its responsibility to make such rules "as it shall deem necessary to carry out the provisions" of the Federal Aviation Act, 49 U.S.C. § 1324(a), and the provision in the

Act requiring every air carrier to provide "adequate service" and enforce "reasonable . . . practices," 49 U.S.C. § 1374(a)(1), CAB adopted regulations on May 7, 1973, requiring certified air carriers to segregate smoking from non-smoking passengers. 14 C.F.R. § 252 (1979). Aside from requiring each carrier to designate a sufficient number of no-smoking seats in each class of service to accommodate persons who wish to be seated in those areas, 14 C.F.R. § 252.2, CAB purposely allowed carriers flexibility in adopting their own schemes for designating smoking and no-smoking seats. *See* 38 F.Reg. 12210 (1973). On January 11, 1979, CAB amended those rules to require "special segregation" of cigar and pipe smokers, no-smoking sections of at least two rows of seats, and a total ban on smoking when aircraft ventilation systems are not working properly. 14 C.F.R. § 252.-1a–.2a.

■ We do not believe that the Federal Aviation Act of 1958 and the smoking regulations thereunder preempt state courts from deciding claims such as this one. We start with the premise that federal law does not preempt state law without a "clear manifestation" of Congressional intent to do so. *See New York State Department of Social Services v. Dublino*, 413 U.S. 405, 413, 93 S.Ct. 2507, 2513, 37 L.Ed.2d 688, 695 (1973). *See also, In re Marriage of Schissel*, 292 N.W.2d 421 (1980). The resolution of any given preemption problem depends on the features of the particular federal regulatory scheme. *Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 626, 93 S.Ct. 1854, 1856, 36 L.Ed.2d 547, 550 (1973). The federal statute here contains a provision which clearly answers the preemption question. It provides that "[n]othing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 49 U.S.C. § 1506. In view of section 1506, and in the absence of any provision in the Federal Aviation Act indicating a clear Congressional intent to the contrary, we conclude that a state court can hear and decide a claim such as Dr. Ravreby

presents. *Cf.* McKay, *Airline Tariff Provisions as a bar to Actions for Personal Injuries*, 18 George Wash.L.Rev. 160, 190 (1950) ("[T]here would seem to be no justification for concluding that, by making it the duty of air carriers to establish reasonable practices [under the 1938 Civil Aeronautics Act], and empowering the Board to alter those practices which are unreasonable . . . Congress intended to occupy the field of liability for personal injuries. . . .").

**B.** *Primary jurisdiction.* United argues that this court should recognize CAB's primary jurisdiction over this case because of the Board's "years of regulatory experience with the problems presented by smoking on aircraft."

■ The doctrine of primary jurisdiction " 'is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties.' " *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303, 96 S.Ct. 1978, 1987, 48 L.Ed.2d 643, 654 (1976), *quoting United States v. Western Pacific R. Co.*, 352 U.S. 59, 63, 77 S.Ct. 161, 165, 1 L.Ed.2d 126, 132 (1956). Under the doctrine, "it may be appropriate [for a court] to refer specific issues to an agency for initial determination where that procedure would secure 'uniformity and consistency in the regulation of business entrusted to a particular agency,' or where 'the limited functions of review by the judiciary [would be] more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.' " *Id.* 426 U.S. at 303–04, 96 S.Ct. at 1987, 48 L.Ed.2d at 654–55, *quoting Far East Conference v. United States*, 342 U.S. 570, 574–75, 72 S.Ct. 492, 494, 96 L.Ed. 576, 582 (1952). Thus the doctrine is "particularly" applicable "when the issue involves technical questions of fact uniquely within the expertise and experience of an agency . . . .." *Id.* 426 U.S. at 304, 96 S.Ct. at 1987, 48 L.Ed.2d at 655. The doctrine ap-

plies equally in state and federal courts where the power to determine an issue initially is vested by Congress in a federal agency. *See Slocum v. Delaware, Lackawanna & Western Railroad Co.*, 339 U.S. 239, 244, 70 S.Ct. 577, 580, 94 L.Ed. 795, 800 (1950).

The primary jurisdiction doctrine does not apply, however, when the specific regulatory issue relating to a court action has already been considered and acted upon by the agency. *See, e. g., Klicker v. Northwest Airlines, Inc.*, 563 F.2d 1310, 1312 (9th Cir. 1977); *Viking Travel, Inc. v. Air France*, 462 F.Supp. 28, 43 (D.N.Y.1978); *Davis v. Northeast Airlines, Inc.*, 116 N.H. 429, 432, 362 A.2d 208, 211 (1976). In such cases, the purposes of the doctrine are not served by its application. *See United States v. Western Pacific Railroad Co.*, 352 U.S. 59, 69, 77 S.Ct. 161, 168, 1 L.Ed.2d 126, 135 (1956); *Klicker*, 563 F.2d at 1313. CAB has conducted investigations and issued rules on the specific regulatory issue of relevance to this case—what measures airlines must take regarding on-board smoking so as to provide "adequate service" and to enforce "reasonable practices" under section 1374(a)(1), title 49, United States Code. We hold then that the primary jurisdiction doctrine is inapplicable to this action.

II. *Tort bases of recovery.* Dr. Ravreby claims that United breached a common-law duty to exercise the highest degree of care in protecting his well-being in two respects: first, United breached its duty to provide a "safe environment for travel," and second, United breached its duty to "protect plaintiff from harmful or offensive actions of fellow passengers."

A. *Duty to provide safe environment for travel.* In the absence of statute, courts which have dealt with cases involving air carriers usually apply the rules applicable to carriers generally. *See Arrow Aviation, Inc. v. Moore*, 266 F.2d 488, 490 (8th Cir. 1959); *Annot.* 75 A.L.R.2d 848, 849 n.4 (1961). With regard to the standard of care applicable to carriers generally this court stated:

"The carrier's duty stops just short of insuring the safety of the passenger, and the common expressions of the law on the subject are that the carrier is bound to protect the passenger as far as human care and foresight will go, and that the carrier is liable for slight negligence."

*Murray v. Cedar Rapids City Lines*, 242 Iowa 794, 800, 48 N.W.2d 256, 260 (1951), *quoting Kliebenstein v. Iowa Railway & Light Co.*, 193 Iowa 892, 895, 188 N.W. 129, 130 (1922). *See Scott v. Eastern Air Lines, Inc.*, 399 F.2d 14, 20–21 (3d Cir.), *cert. denied*, 393 U.S. 979, 89 S.Ct. 446, 21 L.Ed.2d 439 (1968); *Arrow*, 266 F.2d at 491. The rule is subject to certain qualifications. Thus it applies only to dangers "which reasonably and naturally may be anticipated," and the required care "must be such as not to prevent the practical performance of the carrier's duty to transport with expedition in accordance with the usual requirements of the business." *Murray*, 242 Iowa at 800, 48 N.W.2d at 260. Where reasonable minds could differ from the testimony "the question remains one for the jury." *Id.*

Under our standard of review, we must decide (1) whether a reasonable fact finder could conclude United would not reasonably anticipate the danger that Dr. Ravreby would become sick from the smoke of fellow passengers, and (2) whether a reasonable fact finder could conclude United fulfilled its required high degree of care in the measures it took to guard against that danger. We treat the findings of the District Judge as though they had been returned by a jury.

We answer the first question in the negative. Carriers must reasonably take notice of the habits of their passengers. *Garrett v. American Airlines, Inc.*, 332 F.2d 939, 942 (5th Cir. 1964). Consequently, United had to foresee that some of its passengers would smoke during their flight. United also must be charged with knowledge that a significant portion of the traveling public finds smoke highly bothersome; this was the very premise which led CAB to promulgate regulations to segregate smoking and no-smoking seats. 38 F.Reg. 12209 (1973).

On the second question, however, we believe a reasonable fact finder could conclude that United's conduct in this case did not constitute a breach of its high duty of care, under all the circumstances. We have in mind three factors supporting this conclusion.

First is the remoteness of the danger on which Dr. Ravreby bases his complaint. The standard of care that must be exercised with respect to a given danger is in proportion to the likelihood of injury occurring. *See Mescher v. Brogan*, 223 Iowa 573, 574–75, 272 N.W. 645, 646 (1937); *Crase v. City of Detroit*, 341 Mich. 132, 136, 67 N.W.2d 93, 94 (1954); 13 C.J.S. *Carriers* § 678, at 1256 (1939) ("[D]iligence should be proportioned to the nature and risk of the undertaking . . . .."). The record contains copies of a CAB statement that "aircraft cabins are very effective in changing cabin air." 38 F.Reg. 12207 (1973). Another CAB document in the record notes assertions by the airlines that air on modern jets is "completely replaced or cleaned at least every three minutes." 44 F.Reg. 5075 (1979).

Second, United has an obligation to preserve the comfort of its smoking passengers as well as of the non-smokers. A reasonable fact finder might conclude that no action by the carrier short of completely prohibiting smoking in the first-class section would definitely prevent the discomfort of which Dr. Ravreby complains. The Magistrate who originally heard the claim aptly remarked, "I think you are essentially asking that this Court should find them negligent in not banning smoking entirely on an airplane." CAB itself points out in one of Dr. Ravreby's exhibits, the complete prohibition of smoking on aircraft might well subject some smoking passengers to "severe discomfort." 38 F.Reg. 12209 (1973). We are not prepared to say a reasonable fact finder could not decide United's designation of smoking and non-smoking seats to be a reasonable compromise between the rights of the smoking and non-smoking passengers.

The third factor consists of the regulations promulgated by CAB relating to an airline's duty to provide no-smoking seats for its passengers who desire them. CAB adopted rules requiring certified airlines "to provide specially designated 'no-smoking' areas in which smoking is prohibited." 14 C.F.R. § 252.2; 38 F.Reg. 12209 (1973). CAB revised the rule as it was originally proposed so as to allow carriers themselves to designate the location of the no-smoking area in each class of service, rather than requiring airlines to locate the smoking seats in any particular part of the craft. The purpose of the revision was to allow the airlines flexibility, which was "to be used in such a manner as to minimize, to the greatest practicable extent, points of contact between smokers and non-smokers." 38 F.Reg. 12210 (1973). CAB apparently contemplated that its scheme of segregating smoking passengers from non-smoking passengers would still entail a contact at *some* point between smoking and non-smoking passengers; it did not attempt to eliminate all contact whatsoever. A reasonable fact finder could conclude the crux of Dr. Ravreby's complaint is that he was seated at the "point of contact" which will in fact exist under CAB rules. This factor is relevant to the issue of whether United was negligent, and might be relied on by a reasonable fact finder in considering whether United did or did not meet the applicable standard of care.

Dr. Ravreby calls attention to the amendment to the CAB rules requiring at least two rows of non-smoking seats in each class of travel, 14 C.F.R. § 252.2(b), and to the existence of only one row of non-smoking seats in the first-class compartment during this flight. The amendment however was not in effect at the time of this flight. Moreover, the amendment still permits points of contact between smoking passengers and non-smoking passengers.

The temptation is for us to step in and decide the negligence issue de novo, but we can reverse the finding of no negligence only if we could set aside the verdict of a jury which so found. Iowa R.App.P. 14($f$)(1). Dr. Ravreby had the burden of proof on this proposition, and seldom does a

party who has the burden of proving a proposition establish it as a matter of law; this is especially true of an issue such as negligence. *Johnson v. Svoboda*, 260 N.W.2d 530, 536 (Iowa 1977).

We hold Dr. Ravreby did not establish as a matter of law that United breached its duty of care.

B. *Duty to protect passengers from harmful or offensive conduct of fellow passengers.* Dr. Ravreby also contends that United breached its duty to protect him from the harmful or offensive conduct of fellow passengers. He bases this theory on the carrier's duty to protect passengers from the tortious conduct of other passengers, *see Murray*, 242 Iowa at 800, 48 N.W.2d at 260, and the assertion that the actions of smoking passengers on his flight constituted a tort. *See* W. Prosser, The Law of Torts § 9, at 34 (4th ed. 1971).

■■■ We reject this theory for essentially the same reasons that we rejected Dr. Ravreby's prior theory. A carrier is required to take reasonably appropriate steps to minimize likely harm from fellow passengers, *Garrett*, 332 F.2d at 942; *Crase*, 341 Mich. at 136, 67 N.W.2d at 94; *Haser v. Pape*, 77 N.D. 36, 43, 39 N.W.2d 578, 582 (1949), but we believe the same considerations which would allow a reasonable fact finder to conclude United was not negligent regarding the environment it provided would also allow the fact finder to conclude Dr. Ravreby had not established this theory under the evidence.

■■■ III. *Contract basis.* Dr. Ravreby's final basis for recovery is that the contract of carriage between the parties included an agreement that he "would at least be less bothered by tobacco smoke than those seated in the smoking area."

The foundation for this claim is the question put to Dr. Ravreby at the time he checked in for the flight: whether he preferred a smoking or no-smoking seat.

B. We cannot accept Dr. Ravreby's contract basis of recovery. Section 1373(a) of title 49 of the United States Code requires certified air carriers to file tariffs with CAB

containing rates and such rules as the Board may require. Because the Act expressly prohibits the carrier from deviating from those terms in its contracts with its passengers, 49 U.S.C. § 1373(b)(1), courts have generally recognized that the contractual rights and liabilities of the carrier and its passengers are "conclusively and exclusively" governed by the provisions of the tariff. *See Tishman & Lipp, Inc. v. Delta Air Lines*, 413 F.2d 1401, 1403 (2d Cir. 1969); *Slick Airways, Inc. v. United States*, 292 F.2d 515, 519 (Ct.Cl.1961); *Mao v. Eastern Airlines, Inc.*, 310 F.Supp. 844, 846 (S.D. N.Y.1970); Markhan & Blair, *The Effect of Tariff Provisions Filed Under the Civil Aeronautics Act*, 15 J.Air.L. & Com. 251, 273 (1948) ("The tariff, then, contains the only terms upon which the parties can legally agree."). *Cf.* 13 Am.Jur.2d *Carriers* § 107, at 648 (1964) (any deviation from the tariff in contract of carriage where prohibited by statute renders special contract void). Dr. Ravreby has cited no portion of United's filed tariff which supports his contract theory. We therefore decline to find that any special contractual obligation arose as a result of United's policy of segregating smoking and non-smoking passengers.

■■■ B. Dr. Ravreby also cites section 323 of the Restatement of Torts in support of his contract basis of recovery. The section states:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

Dr. Ravreby claims that United, "by providing [him] with a 'no-smoking' seat, undertook to render services to him which it should have recognized as being necessary for his protection," and that its "failure to take any steps to protect [him] from tobac-

co smoke constituted a failure to exercise reasonable care in the performance of its undertaking."

Assuming for purposes of decision that this section gives rise to a contractual obligation and that we accept the section, parties who have undertaken to render services cannot be held liable under it unless they fail to exercise reasonable care in performing the undertaking. We have already held that a rational fact finder could conclude United was not negligent in the manner it transported Dr. Ravreby.

Because Dr. Ravreby did not establish as a matter of law that United breached its duty to him, we uphold the judgment. No necessity exists to address the issue of damages.

AFFIRMED.